121 So.2d 38 (1960)
Ruby BROWN and Ruben Brown, Appellants,
v.
C.H. SWINDAL, Appellee.
No. B-331.
District Court of Appeal of Florida. First District.
June 2, 1960.
*39 P. Donald DeHoff, Jacksonville, for appellants.
Mathews, Osborne & Ehrlich, Jacksonville, for appellee.
WIGGINTON, Chief Judge.
Plaintiffs have appealed from a final judgment entered upon a verdict directed by the court in favor of the defendant at the close of plaintiffs' evidence. The cause of action was for medical malpractice grounded upon the theory that defendant dentist's negligence was the proximate cause of plaintiffs' damages. It is contended on appeal that the evidence was sufficient to establish a prima facie case of negligence, and that the court erred in taking the case from the jury and directing a verdict for defendant.
Plaintiff wife called at defendant's office complaining of an aching wisdom tooth and requested that it be extracted. Defendant, in consideration of the fee to be paid him, assumed the responsibility of this undertaking. After examining plaintiff's mouth defendant administered novocain and then proceeded to extract the aching tooth. When the tooth was removed there was discovered attached to its roots a foreign substance which plaintiff assumed to be fragments of her jawbone, but which defendant testified was part of the process or bonelike substance surrounding the root of the tooth. No preliminary x-ray of the tooth was either requested or taken. Defendant testified that he had no such equipment in his office, but even had an x-ray picture of the tooth been taken, it would not have disclosed that the root was so embedded in the process as would result in a portion of the latter being removed when the tooth was extracted. Defendant further testified that although it was not usual for part of the process of the jaw to cling to the roots of a tooth upon extraction, that nevertheless such an occurrence was not uncommon.
On Friday following the extraction plaintiff experienced severe pain in the area where the tooth had been removed. She thereupon returned to defendant's office, but was informed that he was out and would not return until the following Monday. That afternoon plaintiff reached defendant by telephone and after explaining her condition was directed to pack the socket of the tooth with cotton soaked in a specified oral antiseptic. Plaintiff followed defendant's directions, but when the pain did not subside she consulted another dentist the following morning who x-rayed the area of extraction, drained and treated it and administered an injection of some sort. On the night of the same day that plaintiff received treatment from the second dentist, she consulted a medical doctor who likewise administered a pain relieving injection. Two days later plaintiff returned to defendant's office, who after examining her mouth, told her that the area of extraction was healing satisfactorily and that she need not return for further treatment. Despite the treatments received by plaintiff from the two dentists and medical doctor she continued to suffer pain in her face and jaw, which pain continued down to the date of trial. Plaintiffs' entire evidence consisted of their own testimony and portions of defendant's pretrial discovery deposition which was introduced without objection.
The gravamen of this action is the alleged acts of negligence committed by defendant in the extraction of plaintiff's tooth, and the want of due care exercised by defendant in his treatment of plaintiff's mouth after the extraction.
*40 In Crovella[1] this court held that generally it is the duty of a medical practitioner to apply to the diagnosis and treatment of his patient the ordinary skills, means and methods that are recognized as necessary, and which are customarily followed in the particular cases, according to the standard of those who are qualified by training and experience to perform similar services in the community. This rule was predicated upon a similar statement of the law pronounced by the Supreme Court in the Hill case[2]. A careful review of the record before us fails to reveal any expert testimony adduced by plaintiffs, other than that of defendant, from which the jury could have lawfully concluded that defendant had violated the duty owed by him to plaintiff within the contemplation of the above stated rule of law. The uncontradicted testimony of defendant is that the extraction was performed and the treatment administered in the usual manner.
In order to meet the deficiency created by the absence of any expert proof to establish the alleged acts of negligence, plaintiffs contend that the facts in this case are such that the jury could have found defendant guilty of negligence without the aid of expert medical testimony. The exception to the general rule on which plaintiffs rely was recognized by this court in the Crovella case in which we said that the overwhelming weight of authority supports the view that except to the extent that the physical condition of a person is open to ordinary observation by persons of common experience, the testimony of one who is qualified in the field of medical knowledge must be adduced to inform the jurors of the proper procedures for diagnosing and treating the particular case. The exception mentioned in Crovella was a basis for the holding of the Supreme Court in the Dohr decision,[3] and was the subject of further elaboration in the decision subsequently rendered in Atkins.[4] In the latter case our Supreme Court said, "Obviously, except in rare cases, neither the court nor the jury can or should be permitted to decide, arbitrarily, what is or is not a proper diagnosis or an acceptable method of treatment of a human ailment * * *. But jurors of ordinary intelligence, sense and judgment are, in many cases, capable of reaching a conclusion, without the aid of expert testimony, in a malpractice case involving a charge of negligence in the application or administration of an approved medical treatment. For example, in the exercise of only common sense and ordinary judgment, a jury would have the right to conclude that it is negligence to permit a wound to heal superficially with nearly half a yard of gauze deeply imbedded in the flesh, Walker Hospital v. Pulley, 74 Ind. App. 659, 127 N.E. 559, 128 N.E. 933; to fail to sterilize surgical instruments before performing an operation, Lanier v. Trammell, 1944, 207 Ark. 372, 180 S.W.2d 818; to cut off part of a patient's tongue in removing adenoids, Evans v. Roberts, 172 Iowa 653, 154 N.W. 923; to perforate the urethra in performing an operation in which it was necessary to use care not to do so, Goodwin v. Hertzberg, 1952, 91 U.S. App.D.C. 385, 201 F.2d 204." The court continued by commenting that "Even in those cases in which some expert testimony may be required to show causation, the jurors may be authorized to infer from the circumstances that the defendant was negligent in the administration of an approved medical treatment, despite the absence of direct expert testimony to this effect and in the face of expert testimony to the contrary."
The evidence, considered in a light most favorable to the plaintiff, fails to *41 bring the facts of this case within the recognized exception to the foregoing rule which requires proof of negligence by expert medical testimony. The mere fact that portions of the process clung to the roots of plaintiff's tooth and were removed in the course of the extraction, and the fact that plaintiff suffered severe pain over a period of time after the tooth was removed, falls far short of that character of proof required in order to establish negligence or want of care on the part of defendant. Before negligence could be inferred from the facts in this case, many questions would have to be answered. Why does part of the process occasionally remain attached to a tooth in the process of extraction? Is it because of inherent weakness or disease in the tooth process or jaw of the particular patient? Or is it because of excessive force used in performing the extraction? Can such an occurrence be avoided by the use of diagnostic devices, or is such an occasional occurrence unavoidable? Are there alternative methods of extraction when the jaw is weakened or diseased, assuming that such condition can be diagnosed? What is the prevailing standard among dentists of the community in performing similar extractions? The answers to these and many other vital questions which naturally arise cannot be inferred from the proof adduced by plaintiffs. The correct answers may only be given by an expert in the field of dentistry, which answers would have to be of such character as to clearly show a want of due care on the part of defendant. No such testimony was offered by plaintiffs, and a jury of ordinary intelligence, sense and judgment could not have lawfully inferred from the facts and circumstances in this record that defendant was guilty of negligence in his performance of the extraction, or in the treatment administered to plaintiff, in the absence of direct expert medical testimony to this effect.
For the reasons stated herein the trial judge was eminently correct in finding as a matter of law that plaintiffs had failed to establish a prima facie case of negligence in accordance with the allegations of their complaint, and in withdrawing the case from the jury by directing a verdict in defendant's favor. Indeed, his failure to have done so would have constituted reversible error. The judgment appealed from is accordingly affirmed.
Affirmed.
STURGIS, J., and WILLIS, BEN C., Associate Judge, concur.
NOTES
[1] Crovella v. Cochrane, Fla.App. 1958, 102 So.2d 307.
[2] Hill v. Boughton, 1941, 146 Fla. 505, 1 So.2d 610, 134 A.L.R. 678.
[3] Dohr v. Smith, Fla. 1958, 104 So.2d 29.
[4] Atkins v. Humes, Fla. 1959, 110 So.2d 663, 666.