224 So.2d 621

**Ruth H. PARRISH**

v.

**Dr. John H. SPINK.**

**6 Div. 503.**

Supreme Court of Alabama.

June 12, 1969.

Rehearing Denied July 10, 1969.

James O. Haley, Lyman H. Harris, Lange, Simpson, Robinson & Somerville, Birmingham, for appellee.

Jones, Fowler, Propst & Topazi, Birmingham, for appellant.

HARWOOD, Justice.

This is a malpractice suit brought against an oral surgeon. At the conclusion of the evidence, the court gave the general affirmative charge in favor of the defendant.

The jury's verdict was in accordance with the court's instructions, and judgment for the defendant was entered pursuant to the verdict. The plaintiff below has perfected this appeal from the judgment.

The plaintiff, Mrs. Ruth H. Parrish, was referred by her regular dentist to the defendant, Dr. John H. Spink, an oral surgeon, for the purpose of having three teeth extracted

One of the teeth to be extracted was an imbedded wisdom tooth in the lower right jaw. Another was on the left side.

Mrs. Parrish informed Dr. Spink she was allergic to novacaine, and she was administered a general anesthetic for the operation. The operation was performed on Monday, 27 September 1965. Mrs. Parrish had been accompanied to Dr. Spink's office by her sister, Mrs. Catherine Fleming, who was a registered nurse, and by a friend, Mrs. Ann Roberts.

When Mrs. Parrish regained consciousness after the operation, she was in a recovery room and Mrs. Fleming and Mrs. Roberts were there.

Mrs. Parrish testified that upon awakening after the operation, she had a strange numb feeling about the right side of her lip. She requested Dr. Spink see her, and he told her she had chewed her lip a little bit and he put medicine on it. That night she looked at her lip in a mirror. The lip had drooped and hung down "just like it had turned wrong side out." A water blis-

ter had developed on the inside of her mouth, and through this water blister she saw a black stitch holding the flesh together. The next morning the water blister was gone. In rinsing her mouth with warm salt water, as instructed by Dr. Spink, the stitch was washed out.

She next saw Dr. Spink on Wednesday and was examined by him. He prescribed a salve which she used. She commented on the stitch, which had washed out, but Dr. Spink did not reply. She continued to see Dr. Spink every few days for about two months, and she continued to have pain and numbness in the area of the corner of her lip and chin.

Some two weeks after the operation a sore or ulcer formed in the right corner of her lips.

Mrs. Fleming testified that when Mrs. Parrish was returned to the recovery room, she saw a reddened place on the right corner of her mouth. The dental assistant told Mrs. Fleming that Mrs. Parrish had bitten her lip a little bit. Mrs. Parrish seemed to lack "musculature" control of her mouth when she tried to talk. Friday night following the operation on Monday, she made an inspection of Mrs. Parrish's mouth and "it appeared to be cut." The sore that developed on Mrs. Parrish's mouth remained for two or three weeks and was slow in healing.

Mrs. Roberts testified she had seen a stitch in Mrs. Parrish's mouth, as did Mrs. Evelyn Tubbs, another sister of the plaintiff. Neither, however, had noticed a later sore on her mouth.

On 6 December 1965, Mrs. Parrish consulted Dr. Anthony Marzoni, a plastic surgeon in Birmingham.

Dr. Marzoni testified that the skin of the right lower corner of the lip and mouth was a little bit red, and there was evidence of a healed incision that looked quite well, though a little bit red. Mrs. Parrish complained of soreness and numbness of the right corner of her mouth.

On 12 January 1966 Dr. Marzoni again saw Mrs. Parrish. At this time she had an acute redness in the right corner of her mouth and some thickness of the lip. He felt this could be a reaction to an unprescribed ointment she had bought, and told her to discontinue it. In June 1966, she was much better. In July 1966, she again came to see him and there was a red blush in the area. He saw what he thought was a fever blister inside the mouth, gave her some cortisone ointment for this redness which he thought was secondary to the blister. In April 1966, her mouth was almost, but not quite, normal. The scar tissue he observed was mature and he did not think it would give her any trouble.

The symptoms of numbness in the area as described by Mrs. Parrish were consistent with a nerve injury, but this could not be objectively demonstrated. Dr. Marzoni testified he had never seen this type of numbness fail to completely disappear with time.

The *plaintiff* also called as a witness the defendant, Dr. Spink.

Dr. Spink testified that after Mrs. Parrish was anesthesized a bite block was inserted in her mouth, in order to hold it open. A metal cheek retractor was then inserted to hold the cheek away from the tooth which was to be extracted.

To expose the imbedded wisdom tooth it was necessary to cut the gum, and remove about a half inch of bone from above the crown portion of the tooth. This is an extremely difficult procedure. The tooth had to be broken into sections for removal.

This particular tooth enveloped a nerve which extends around the jaw to the midline of the chin. An injury to this nerve will sometimes cause, but not often, a loss of sensitivity in the lip area. This condition clears up usually in from two to three weeks, though it can continue for as long as six months. As to the scar inside the mouth, it was Dr. Spink's opinion that it resulted from the slow healing ulcer, as such condition can cause this type scar.

Upon removal of the retractor and bite block, Dr. Spink observed a raw place on the inside of the mouth. It was not a cut, but a place where the skin or mucosa was absent. It could not have been caused by a knife or drill as the retractor covered this area. The edges of the retractor itself are beveled and smooth.

Dr. Spink further testified that when a retractor is as skillfully used as a dentist can use it, a tear or raw spot can be developed simply from the pressure of the retractor being in its position over a period of time, and that such injuries do result in from 5 to 10 per cent of the operations of the type undergone by Mrs. Parrish.

Dr. Spink denied he had placed a stitch in the area of the raw place, though after completion of the extractions, he had stitched the gums at the site of the extractions.

Dr. Spink testified that the tools and instruments used by him are the best he can obtain, and are generally accepted for use in this area, and all areas, by oral surgeons. Further, in his opinion, he had exercised that degree of care exercised by oral surgeons in treating patients for the condition for which he was treating Mrs. Parrish; that nothing unusual happened during the operation, and the only unusual thing about Mrs. Parrish's case was that she did not heal as persons normally do.

■■ In attending a patient a physician or surgeon undertakes to exercise that degree of care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice ordinarily exercise in like cases. A showing that an unfortunate result has followed does not of itself shift the burden of proof. The complainant patient must still show negligence. Moore v. Smith, 215 Ala. 592, 111 So. 918; Carraway v. Graham, 218 Ala. 453, 118 So. 807.

■■ Ordinarily, in a malpractice case, proof as to what is or is not proper practice, treatment, and procedure, can be es-

tablished only by expert medical evidence. Snow v. Allen, 227 Ala. 615, 151 So. 468. In such a case lack of expert testimony results in lack of proof of negligence and such proof is essential to establish a plaintiff's case.

An exception to the above rule is applied to those cases where a physician's or surgeon's want of skill or lack of care is so apparent as to be within the comprehension of laymen and to require only common knowledge and experience to understand it, then expert evidence is not required. See 141 A.L.R. pps. 12, 13, for citation of innumerable authorities.

Those cases which have applied the above rule concern the leaving of objects in a patient's body, such as forceps, gauze, sponges, needles, etc., (see 162 A.L.R. 1299), or injuries to the body remote from the area of the operation, such as an injury to an arm and shoulder during an operation for appendicitis, (Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258), or an injury to an eye during the same type of operation. (Meadows v. Patterson, 21 Tenn.App. 283, 109 S.W.2d 417).

In such situations it has been held by many courts that the facts themselves established negligence without the need for expert medical testimony, and the case should go to the jury either under the doctrine of res ipsa loquitur, or on the basis that upon the plaintiff showing such facts, the burden of going forward with a defense is then upon the defendant.

In a number of our cases this court has held that under the facts of the particular case then being considered, the doctrine of res ipsa loquitur was not applicable. Dabney v. Briggs, 219 Ala. 127, 121 So. 394; McKinnon v. Polk, 219 Ala. 167, 121 So. 539; Carraway v. Graham, 218 Ala. 453, 118 So. 807; Ingram v. Harris, 244 Ala. 246, 13 So.2d 48; Moore v. Smith, 215 Ala. 592, 111 So. 918; Watterson v. Conwell, 258 Ala. 180, 61 So.2d 690.

These statements made under the particular facts of the case then being considered has led counsel for appellee to assert that "res ipsa loquitur does not apply in malpractice cases." This statement we consider is not borne out upon analysis of our cases.

But be that as it may, in Sellers v. Noah, 209 Ala. 103, 95 So. 167, this court wrote:

"Where a surgeon performing an operation leaves in the body of his subject, closing the wound, a foreign substance that causes injury or damage to the subject, the burden of proof passes to the impleaded surgeon to show that he exercised the stated reasonable and ordinary care, skill, and diligence in respect of the operation upon his subject, including the process of closing the wound. Davis v. Kerr, 239 Pa. 351, 86 Atl. 1007, 46 L.R. A.,N.S., 611; 21 R.C.L. p. 407, § 49."

Thus, whether a plaintiff in a malpractice suit be relieved of presenting expert medical testimony after producing evidence demonstrating lack of due care apparent as a matter of common knowledge, the result is the same whether it be reached by application of res ipsa loquitur, or by casting the burden upon the physician of going forward with his defense. We see no need to falter over phraseology.

In the posture of the present case, we can find no evidence tending to show negligence on the part of Dr. Spink. The plaintiff being anesthetized at the time could not testify as to any lack of due care on the part of Dr. Spink, nor could her sister and friend who accompanied her to Dr. Spink's office but were not in the operating room during the oral surgery procedure.

Dr. Spink's testimony *as a witness for the plaintiff* clearly demonstrated no lack of due care or skill in performing the operation. He did testify that in using the cheek retractor abrasions occur in from 5 to 10 per cent of the cases where such retractor is used, regardless of the skill with

which the retractor is used. He further testified that the use of the cheek retractor in the type of operation he performed was the standard procedure followed by oral surgeons, and that he had exercised due care in its use. In other words, even though the use of a cheek retractor may cause injury to the cheek in 5 to 10 per cent of the operations in which it is used, its use in the type of operation Dr. Spink performed was standard practice and in the category of a calculated risk.

Counsel for appellant relies almost entirely on Merola v. Stang (Dist. Ct. of Appeals of Fla., Third Circuit), 130 So.2d 119. In said case, a dentist was using a high speed drill in the patient's mouth. While so operating, the drill jumped the safety guard and cut entirely through the patient's lower lip and down to the point of her chin. The cut was extensive and disfiguring. Judgment in the trial court was for the plaintiff. In affirming, the Florida Court of Appeals concluded that the jury, from common knowledge, could decide regardless of expert testimony, that what had happened amounted to negligence on the part of the dentist, and distinguished the facts in *Merola,* supra, from those in Brown v. Swindal (Fla.App.), 121 So.2d 38, wherein a piece of jawbone clinging to the tooth was dislodged in extracting the tooth. The dentist defendant testified this was not an uncommon occurrence in such operation.

In *Brown,* supra, the lower court directed a judgment for the defendant and the judgment was affirmed on the basis that from the nature of the operation a jury could not, in the absence of expert testimony, know or conclude that what had occurred was due to negligence.

■ That, of course, is the exact situation existing in the present case. Under Dr. Spink's testimony, the operation was performed with due skill and under standard procedures. In the absence of expert testimony to the contrary, the jury could not know or conclude from common knowl-

edge that any negligence attended the operation.

Affirmed.

LIVINGSTON, C. J., and LAWSON and MERRILL, JJ., concur.