Appeal by plaintiff from summary judgment for defendant in plaintiff's action based upon allegedly negligent medical treatment. We affirm.
Plaintiff, Kenneth W. Lightsey, was admitted to Bessemer Carraway Hospital on March 28, 1980, with a history of acute viral hepatitis. His physician, Dr. Hugh Hood, determined that a liver biopsy was necessary to determine the type of hepatitis present. He initiated a closed liver biopsy, i.e., a needle biopsy, and, in the process, Lightsey's gallbladder was inadvertently penetrated with the needle. Two attempts failed to produce any liver tissue. Dr. Hood contacted Dr. William Edge, a general surgeon, who decided to perform an open biopsy in order to obtain the liver tissue. While performing this procedure on April 3, 1980, Dr. Edge found that the puncture site had healed itself. He also found that the gallbladder was abnormally positioned slightly outside of and over a portion of the liver. Dr. Edge stated in his affidavit that a "gallbladder will only be found in this position in two percent (2%) of patients examined, which makes it a very rare condition."
Later tests performed on the liver tissue revealed that Lightsey was suffering from chronic persistent hepatitis.
Plaintiff filed this action on April 3, 1981. Bessemer Clinic's motion to dismiss was denied, and it propounded interrogatories. Bessemer Clinic filed its motion for summary judgment on July 14, 1982, based upon the pleadings and the affidavit of Dr. Hood. In his affidavit, Dr. Hood established the need for the biopsy, and added:
 "(6) I made two attempts to complete the closed liver biopsy. Neither attempt produced any liver tissue. Bilious material, however, was obtained which led me to suspect the gallbladder had been punctured. Because of this suspected puncture and in the exercise of due care and caution for the welfare of Mr. Lightsey I contacted Dr. William Edge, a surgeon, who saw the patient within one hour.
 "(7) Because of the need for a liver biopsy, five days later on April 3, 1980, Dr. Edge performed an open biopsy. Dr. Edge found the gallbladder, which usually rests under the liver, to be abnormally positioned outside and on top of the liver. This could not have been anticipated despite the exercise of due care and diligence on my part in treating Mr. Lightsey. The puncture site of the gallbladder had sealed itself and there was no evidence of infection, thus no further measures were taken with respect to the gallbladder.
 "(8) The patient was discharged on April 4, 1980, and his care followed by the Bessemer Clinic, P.A.
 "(9) The liver biopsy revealed that the patient had chronic persistent hepatitis. When seen on May 9, 1980, the patient's incision was healing satisfactorily and he was told he could begin climbing poles for Alabama Power in one week.
 "(10) The care and treatment I rendered to Mr. Lightsey was consistent with care regularly exercised by physicians of my specialty in this general neighborhood under similar circumstances."
Plaintiff responded to defendant's summary judgment motion with an affidavit of his lawyer and with an unauthenticated document entitled "Operative Record," which appeared to be a portion of a medical record. The affidavit of plaintiff's lawyer, in pertinent part, stated:
 "The Plaintiff submits herewith a copy of the medical report of the operation done by Dr. Edge, who is an associate of Dr. Hugh Hood, and submits that the operative record does not reveal nor contain any reference to the gallbladder being abnormally positioned outside and on top of the liver. This copy of the report and the progress report of the doctor is attached hereto and made a part of said counter affidavit in opposition to Motion for Summary Judgment. The Plaintiff would object to the hearsay statements contained in the affidavit of the Defendant and would further aver that said *Page 37 
factor would be a significant factor and should have been contained in the description of the operation or the progress notes."
The "Operative Record" itself contained an account of the operation performed by Dr. Edge and a description of the medical findings. The record does not reveal a "progress report of the doctor" unless this phrase is meant to describe some portion of the "Operative Record."
In further support of its summary judgment motion, defendant then filed another affidavit, this one from Dr. Edge. His affidavit established this:
 "3. The patient had a history of acute viral hepatitis in November of 1979, and had persistent complaints since that time, which were consistent with chronic active hepatitis. Because of the danger in allowing chronic active hepatitis to go undiagnosed, the patient was admitted to the hospital to undergo tests to rule out this possibility.
 "4. Dr. Hood informed me that two (2) attempts had been made to perform a closed liver biopsy, however, neither attempt produced any liver tissue. Dr. Hood also informed me that some bilious material had been obtained, which led him to suspect that the gallbladder had been punctured. A joint decision was made to treat the patient with antibiotics, and not to undertake surgical intervention immediately. I, along with Dr. Hood, followed the patient very closely subsequent to the attempted closed liver biopsy to insure that no infection resulted. Because of the need for a liver biopsy, to rule out the possibility of chronic active hepatitis, five (5) days later, on April 3, 1980, I performed an open liver biopsy on the patient.
 "5. Under general anesthesia, the patient was prepared and draped. A small right upper quadrant subcostal incision was made, which extended through skin, subcutaneous tissues and muscle fascia. The rectus muscle was divided, and the posterior sheath was opened, and the abdomen entered and explored. The gallbladder, which usually rests under the liver, was found to be outside and on top of the liver at the exact spot where the needle biopsy was attempted. The gallbladder will only be found in this position in two percent (2%) of patients examined, which makes it a very rare condition. In the lesser sac and lateral gutter, there was approximately fifteen to twenty (15-20) ccs. of free bile without any evidence of infection or pus. This fluid was cultured and evacuated. The bottom portion of the gallbladder was inspected, and a needle puncture site was seen to be present, but it was no longer leaking, and apparently had sealed itself. In order to insure that no further leakage occurred, this site was over-sewn with double 0 chromic. The gallbladder was closely inspected for signs of further leakage, but none was discovered. Because of the previous bile accumulation, a medium penrose drain was placed in the pouch of the Morrison and brought out through a wound in the right flank. After liver material was obtained for the biopsy, the patient was closed and sent to the recovery room in satisfactory condition.
 "6. The tests performed on the biopsy material showed that the patient had chronic persistent hepatitis, which successfully ruled out the possibility of chronic active hepatitis.
 "7. I am familiar with the standard of care regularly exercised by physicians under circumstances similar to those involved in this patient. The care and treatment which Dr. Hugh M. Hood rendered Kenneth Lightsey complied in all respects with the applicable standard of care."
Following a hearing, the motion was denied. Shortly thereafter, on December 6, 1982, defendant moved to have plaintiff identify his expert witnesses, and this motion was granted on December 20, 1982, with plaintiff being ordered to respond within 28 days. The plaintiff did not comply with this request until August 1984, when by letter his lawyer notified *Page 38 
defendant's lawyer that Dr. James E. Lee and Dr. Don Brascho would be his expert witnesses. But, after receiving notices that defendant would take the depositions of these physicians, plaintiff's counsel, on September 18, 1984, notified defendant's counsel that Dr. Lee would not be called. Shortly thereafter, Dr. Brascho informed defendant's counsel that he had no indication that he would testify as an expert in the case. Defendant then, on January 14, 1985, renewed its motion for summary judgment on the ground that plaintiff had failed to submit any expert testimony contradicting the affidavits of Dr. Hood and Dr. Edge. This motion was granted on February 20, 1985. On March 14, 1985, plaintiff moved to set aside the summary judgment. After an extension of time for a ruling on the motion (see Rule 59.1, A.R.Civ.P.), the court held a hearing on this motion on September 13, 1985, and the court denied the motion on September 16, 1985.
Plaintiff presents two issues for review. It is urged that summary judgment was not proper, and, alternatively, that the trial court erred by entering summary judgment without proper notice.
From an examination of the materials before the trial judge, it appears that his ruling granting summary judgment was eminently correct. Indeed, this case is controlled by our decision in Holt v. Godsil, 447 So.2d 191 (Ala. 1984). There, this Court recited the principle that "To establish a physician's negligence, the plaintiff must ordinarily proffer expert medical testimony as to what is or is not the proper practice, treatment, or procedure." Cf. Code of 1975, § 6-5-484
(a), and see Parrish v. Spink, 284 Ala. 263, 224 So.2d 621
(1969).
In this case, by affidavits from physicians Hood and Edge, defendant established that plaintiff's care and treatment were performed with due skill and under standard procedures. Plaintiff, from 1982 until 1985, did not establish anything with any affidavit from any medical expert countering the statements of defendant's medical experts. To the contrary, the affidavit of plaintiff's counsel contained nothing to negate the positive statements of defendant's expert witnesses dealing with the applicable standard of treatment. Indeed, there was no showing that plaintiff's counsel was competent as a witness to the matters referred to in his affidavit. See Rule 56 (c), A.R.Civ.P. Accordingly, the allegations in the affidavit proffered by plaintiff were insufficient to establish a genuine issue of material fact, and, therefore, summary judgment was appropriate.
Plaintiff also argues that he was not given proper notice of the renewed motion for summary judgment before entry of that judgment. That motion was filed on January 14, 1985. The accompanying certificate of service discloses that copies of the motion were mailed to counsel for all parties on January 9, 1985. Plaintiff does not contend that his lawyer did not receive a copy of the motion. Thereafter, on February 20, 1985, the trial court granted summary judgment. For 37 days after the renewed motion was filed, plaintiff had filed no expert medical affidavits in opposition. Perhaps under those circumstances, the trial court believed that plaintiff had intended to have the motion ruled upon based upon material already filed. Nevertheless, Rule 56 (c) does by its language contemplate a hearing upon a motion for summary judgment.
The record discloses, however, that no hearing was held on the renewed motion for summary judgment. The case action summary shows only that a pretrial hearing was set for February 21, 1985. It follows, therefore, that the court erred in granting the summary judgment motion on the day before without a hearing thereon.
But, that error was rendered harmless by later events. On March 14, 1985, plaintiff filed his motion to set aside the summary judgment. This motion was continued by "express agreement of all parties," and was ultimately considered at a hearing on September 13, 1985, attended by the parties' counsel of record. During this interim period, plaintiff did not proffer any expert medical evidence by affidavit countering *Page 39 
that of the defendant. The trial court heard and considered argument of counsel, and then denied the motion. The effect of this hearing and the ensuing denial was compliance with the provisions for notice and hearing under Rule 56, A.R.Civ.P.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and HOUSTON, JJ., concur.