Dr. Alan Jones appeals from a judgment based on a jury verdict in favor of the plaintiff, Tabitha Bradford, in her medical malpractice action. The issue for our review is whether the trial court erred in failing to grant Jones's motion for a j.n.o.v., or his alternative motion for a new trial, on the basis that Bradford had failed to establish, through expert testimony, a breach of the applicable standard of care by Dr. Jones.
Tabitha Bradford was referred to Dr. Jones, an orthodontist, by Dr. Ernest Flowers, her regular dentist, in the summer of 1989 after Flowers noticed the crowded condition of her teeth. Dr. Jones examined Tabitha and formulated a plan to correct her dental problems; this plan included the extraction of four of Tabitha's permanent teeth. Dr. Jones wrote a letter to Dr. Flowers outlining the entire treatment plan on October 16, 1989; this letter indicated that teeth numbered 5, 12, 21, and 28[1] were to be extracted. On that same day, Dr. Jones sent a memo to Dr. Flowers specifically instructing him to remove teeth 5 and 12; Dr. Flowers testified at trial that he never received this memo.
Dr. Flowers extracted teeth 5 and 12 on October 21, 1989. Tabitha returned to Dr. Flowers's office on November 27, 1989, and Dr. Flowers extracted tooth 21. Tabitha did not return to Dr. Flowers's office until March 29, 1990. At that time Dr. Flowers noticed additional crowding in Tabitha's mouth, and he sent Tabitha back to Dr. Jones for another checkup before extracting any more teeth. On April 4, 1990, Dr. Jones examined Tabitha and wrote a memo to Dr. Flowers instructing him to extract teeth 21 and 29[2]; in that memo Dr. Jones wrote out the proper names for the two teeth in addition to referring to them by number.
On April 16, 1990, Dr. Flowers extracted tooth 29 and a tooth that he testified was in the position of tooth 21; this tooth was in fact number 20. After discovering that tooth number 20 had been mistakenly extracted, thereby leaving a large space on the left side of her mouth, Tabitha, through her father as next friend, brought this action under the Alabama Medical Liability Act of 1987, codified *Page 1114 
at Ala. Code 1975, § 6-5-540 et seq., against both doctors.
At trial, Dr. Flowers testified that he does not extract permanent teeth in children without the express authorization of an orthodontist. Dr. Flowers also testified that teeth 20 and 21 look very similar, and that he was merely following Dr. Jones's instructions to extract the tooth in the position of tooth 21. Dr. Flowers stated that this practice was warranted because tooth number 20 had drifted into the position of tooth number 21 after he had removed tooth number 21 in November 1989. Dr. Flowers further stated that when a tooth drifts into the space normally occupied by another tooth, the drifting tooth takes on the number of the position that it eventually occupies. Dr. Flowers also stated that he was justified in completely relying on Dr. Jones's instructions, notwithstanding that he had already extracted tooth 21, because Dr. Jones had examined Tabitha himself on April 4, 1990, and therefore could have seen that tooth 21 was missing at that time.
Dr. Jones testified that when he examined Tabitha he was unaware that tooth 21 had been extracted. Dr. Jones stated that the reason he did not realize that the tooth he believed to be number 21 was in fact number 20 was that tooth 20 had been impacted beneath tooth 21 when he had examined Tabitha in October 1989: Dr. Jones stated that in April 1990 he believed that this condition had not changed. Dr. Jones stated that had he known that tooth 21 had been extracted, he would not have ordered the extraction of tooth 20. Dr. Jones also testified that there was no evidence that tooth 20 had drifted into the position of tooth 21.
Dr. Joe Charles Strickland testified as an expert witness for Dr. Jones. Dr. Strickland testified that the treatment rendered to Tabitha did not fall beneath the standard of care because, he said, Dr. Jones's opinion that tooth 20 was impacted beneath tooth 21 was reasonable under the circumstances. Dr. Strickland agreed with Dr. Jones that there was no evidence that tooth 20 had drifted into the position of tooth 21. Dr. Strickland also testified that Dr. Flowers's explanation that a drifting tooth assumed the number of the space that it occupies was inaccurate.
Dr. Jones moved for a directed verdict at the end of the plaintiff's evidence and again at the close of all the evidence: his contention was that the plaintiff's evidence was legally insufficient because she had failed to establish a breach of the applicable standard of care by expert testimony. The trial court denied both motions and submitted the case to the jury, which returned a verdict against both defendants. Thereafter, Dr. Jones moved for a j.n.o.v. or for a new trial, citing the same legal grounds relied upon in his motion for directed verdict. The trial court denied those motions, and Jones appeals.[3]
In reviewing a trial court's denial of a motion for j.n.o.v., this Court must determine if the nonmoving party produced legally sufficient evidence, or "substantial evidence," of each element of the cause of action, so as to justify submitting the case to the jury. Industrial Chemical Fiberglass Corp. v.Chandler, 547 So.2d 812 (Ala. 1988); Alpine Bay Resorts, Inc. v.Wyatt, 539 So.2d 160 (Ala. 1988). "Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co., 547 So.2d 870,871 (Ala. 1989).
The standard for reviewing a ruling on a motion for a new trial based on insufficiency of the evidence is somewhat different. The reviewing court must determine if the verdict and the judgment entered thereon are so against the weight of the evidence as to be "plainly and palpably wrong."Richardson v. Joines, 574 So.2d 787 (Ala. 1991); Ex parteOliver, 532 So.2d 627 (Ala. 1988).
A medical malpractice plaintiff must generally present expert testimony to establish the breach of the applicable standard of care by the defendant health care provider. Ala. Code 1975, § 6-5-548; Parrish v. Spink, 284 Ala. 263, 224 So.2d 621
(1969); Rosemont, Inc. v. Marshall, 481 So.2d 1126 (Ala. 1985). An exception to this rule exists where *Page 1115 
the lack of care is so apparent as to be within the ken of the average layman. This Court has identified four specific situations that do not require that the breach of the applicable standard of care be established by the testimony of a medical expert:
 "1) where a foreign instrumentality is found in the plaintiff's body following surgery; 2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct."
Allred v. Shirley, 598 So.2d 1347, 1350 (Ala. 1992) (quotingHolt v. Godsil, 447 So.2d 191 (Ala. 1984).
None of these specific exceptions is applicable to this case, and this Court concludes that the issues presented here are not so obvious as to be within the ken of the average layman. The defendant's expert, Dr. Strickland, testified that, given the fact that Dr. Jones had specifically instructed Dr. Flowers in October 1989 to remove only teeth 5 and 12, Dr. Jones's belief that tooth number 20 was still impacted beneath tooth number 21 was reasonable and that Dr. Jones's instruction to remove tooth 21 was not a deviation from the applicable standard of care. The plaintiff did not rebut this testimony with expert testimony to the contrary. This is fatal here, because this is simply not a case involving a blatant and obvious error on the part of the doctor: Dr. Jones's explanation for the error was not patently false, and expert testimony was required to establish that his conduct breached the standard of care, that is, that he did not do what a similarly situated orthodontist would have done in the same or similar circumstances. SeeJordan v. Brantley, 589 So.2d 680 (Ala. 1991); Sprowl v. Ward,441 So.2d 898 (Ala. 1983). Because the plaintiff failed to present substantial evidence on the question of breach of the appropriate standard of care, the trial court erred in failing to grant Dr. Jones's motion for j.n.o.v. Accordingly, the judgment based on the jury verdict against Dr. Jones is hereby reversed, and a judgment is rendered for Dr. Jones.
REVERSED AND JUDGMENT RENDERED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
[1] Teeth are numbered according to a universal numbering system, beginning on the upper right side. The upper right wisdom tooth is designated as tooth 1. The upper teeth are numbered consecutively, ending with the upper left wisdom tooth as tooth 16. The lower teeth are numbered from left to right, with the lower left wisdom tooth designated as tooth 17 and the lower right wisdom tooth designated as tooth 32.
[2] Tooth 29 was substituted for tooth 28 at the request of Dr. Flowers because tooth 29 was more accessible.
[3] Dr. Flowers has not appealed from the judgment entered against him.