The plaintiff, Sandra Williamson Dews, as administratrix of the estate of her mother, Jimmie C. Williamson, appeals from a summary judgment in favor of the defendant, Mobile Infirmary Association ("the Infirmary"), in this action seeking damages for medical malpractice. We affirm.
Ms. Williamson was admitted to the Infirmary at 69 years of age and suffering from numerous chronic medical problems, including, among others, urinary tract infections, anorexia, nausea, insulin dependent diabetes, dermatitis, obesity, aphasia, diverticulosis in the colon, severe osteoporosis, and severe demineralization of her bones. Ms. Williamson was also paralyzed on her right side and bedridden as a result of a stroke that she had suffered approximately seven years before. Dr. Donald Kirby, an internist, examined Ms. Williamson and initially diagnosed her as having a "urinary tract infection, anorexia, *Page 63 
nausea, and continued status post cerebrovascular accident with aphasia and right hemiplegia." Dr. Kirby initially treated Ms. Williamson with intravenous antibiotics and fluids, and he later ordered that she undergo a gastrointestinal procedure called an esophagogastroduodenoscopy. Ms. Williamson had to be transported to a special room in the Infirmary to have this procedure performed. The morning after this procedure was performed, Ms. Williamson began complaining of pain in her right shoulder and elbow. An X-ray later confirmed that her right arm was fractured. Ms. Williamson was referred to an orthopedist, who immobilized and treated her arm. The fracture did not require casting or surgery. Ms. Williamson was released from the Infirmary approximately five days later in stable and satisfactory condition.[1]
The plaintiff alleged that Ms. Williamson's arm was fractured through negligence on the part of the Infirmary's personnel. The trial court entered a summary judgment for the Infirmary, concluding that the evidence was insufficient to show that Ms. Williamson's fractured arm was proximately caused by negligence on the part of the Infirmary's personnel. Thus, the sole issue presented for our review is whether the plaintiff presented substantial evidence, see Ala. Code 1975, § 6-5-548 (part of the Alabama Medical Liability Act of 1987), that the fracture in her mother's arm was proximately caused by negligence on the part of Infirmary personnel. "Substantial evidence" is defined in § 6-5-542(5) as "that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." See, also, Leonardv. Providence Hospital, 590 So.2d 906 (Ala. 1991).
In Jones v. Bradford, 623 So.2d 1112, 1114-15 (Ala. 1993), this Court explained:
 "A medical malpractice plaintiff must generally present expert testimony to establish the breach of the applicable standard of care by the defendant healthcare provider. Ala. Code 1975, § 6-5-548; Parrish v. Spink, 284 Ala. 263, 224 So.2d 621 (1969); Rosemont, Inc. v. Marshall, 481 So.2d 1126 (Ala. 1985). An exception to this rule exists where the lack of care is so apparent as to be within the ken of the average layman. This Court has identified four specific situations that do not require that the breach of the applicable standard of care be established by the testimony of a medical expert:
 " '1. where a foreign instrumentality is found in the plaintiff's body following surgery; 2. where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3. where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4. where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct.'
 "Allred v. Shirley, 598 So.2d 1347, 1350 (Ala. 1992) (quoting Holt v. Godsil, 447 So.2d 191
(Ala. 1984))."
The Infirmary supported its summary judgment motion with the affidavits of Glenda Sossaman, a registered nurse with 30 years experience at the Infirmary; Fred Easter, one of two Infirmary employees working in the "Patient Transport Department" who transported Ms. Williamson from her room to the room where the esophagogastroduodenoscopy was performed; and Dr. Kirby, Ms. Williamson's treating physician. Ms. Sossaman testified that there was no indication that Ms. Williamson's fractured arm had been caused by a fall or by any mistreatment or negligence on the part of the Infirmary's personnel. Stating that she was familiar with the standard of care required of nurses in taking care of patients such as Ms. Williamson, and relying on her education, training, experience, examination of medical records, and conversations with Ms. Williamson's family members, Ms. Sossaman concluded that the Infirmary's personnel had not deviated from the appropriate standard of care in handling and treating Ms. *Page 64 
Williamson, so as to have fractured her arm. Mr. Easter testified that he was familiar with the standard of care required of patient transporters and that he had not deviated from that standard of care while transporting Ms. Williamson. Dr. Kirby testified unequivocally that, in his opinion, Ms. Williamson's fracture had spontaneously resulted from her severe osteoporosis and bone demineralization. According to Dr. Kirby, whose opinion was supported by a number of authoritative medical articles, spontaneous fractures can easily occur from ordinary movement (such as changing positions in bed) when osteoporosis has weakened the bone and made it brittle.
It is well settled that when the defendant in a medical malpractice case moves for a summary judgment and makes the requisite prima facie showing of nonliability, as the Infirmary did in this case, the plaintiff, in order to avoid the entry of a summary judgment for the defendant, must present substantial evidence indicating that the alleged negligence (the breach of the appropriate standard of care) probably caused the injury. In determining whether a summary judgment for the defendant was proper, the reviewing court must view the evidence in a light most favorable to the plaintiff. Cates v. ColbertCounty-Northwest Alabama Healthcare Authority, 641 So.2d 239
(Ala. 1994). Our review of the record indicates that the plaintiff presented no expert medical testimony in opposition to the Infirmary's prima facie showing of nonliability. The plaintiff chose, instead, to submit only her own affidavit, which stated, in pertinent part, as follows:
 "It is apparent, and I comprehend that the broken arm suffered by my mother is in an area remote from the area of treatment for which she was admitted to the hospital. It is within common knowledge and experience to understand that a broken arm should not occur during treatment for a urinary tract infection, anorexia, and nausea. This type of injury does not occur in the absence of someone's negligence, and the injury occurred while Jimmie C. Williamson was in the exclusive control of the defendants while taken from her hospital room for tests."
The plaintiff correctly argues that expert medical testimony is not required to establish the breach of the applicable standard of care where a healthcare provider's want of skill or lack of care is so apparent as to be within the comprehension of the average layman. Specifically, the plaintiff argues that expert testimony was not necessary here because, she says, Ms. Williamson's broken arm was in no way connected to the illnesses for which she sought treatment. However, inParrish v. Spink, 284 Ala. 263, 266-67, 224 So.2d 621, 623
(1969), which was cited in Holt v. Godsil 447 So.2d 191
(Ala. 1984), this Court explained:
 "Ordinarily, in a malpractice case, proof as to what is or is not proper practice, treatment, and procedure, can be established only by expert medical evidence. Snow v. Allen, 227 Ala. 615, 151 So. 468 ([1933]). In such a case lack of expert testimony results in lack of proof of negligence and such proof is essential to establish a plaintiff's case.
 "An exception to the above rule is applied to those cases where a physician's or surgeon's want of skill or lack of care is so apparent as to be within the comprehension of laymen and to require only common knowledge and experience to understand [it; in such cases] expert evidence is not required. See 141 A.L.R. pp. 12, 13, for citation of innumerable authorities.
 "Those cases which have applied the above rule concern the leaving of objects in a patient's body, such as forceps, gauze, sponges, needles, etc. (see 162 A.L.R. 1299), or injuries to the body remote from the area of the operation, such as an injury to an arm and shoulder during an operation for appendicitis (Ybarra v. Spangard, 25 Cal.2d 486, 154 P.2d 687, 162 A.L.R. 1258 [(1944)]), or an injury to an eye during the same type of operation.
(Meadows v. Patterson, 21 Tenn. App. 283, 109 S.W.2d 417 [(1937)])."
(Emphasis added.)
The evidence, including expert medical testimony, indicated that Ms. Williamson was admitted to the Infirmary suffering from *Page 65 
numerous and serious medical problems; that although Ms. Williamson was not immediately treated for all of her problems, she nonetheless had severe osteoporosis and demineralization of her bones; that osteoporosis and demineralization weaken the bones and can result in a spontaneous fracture; and that Ms. Williamson suffered such a spontaneous fracture through no fault of any of the Infirmary's personnel. This case does not involve the kind of situation that would make inapplicable the general rule requiring expert medical testimony to establish the appropriate standard of care. For example, we are not concerned here with an unexplained injury to an eye, arm, or shoulder during an operation for appendicitis. This is simply not a case involving a blatant and obvious error on the part of the Infirmary's personnel. The testimony of Dr. Kirby, Ms. Sossaman, and Mr. Easter prima facie showed that Ms. Williamson, through normal movement, suffered a spontaneous fracture of her arm as the result of a degenerative bone disease. Because the issues presented in this case were clearly not so obvious as to be within the knowledge of the average layman, it was incumbent on the plaintiff to present substantial evidence (by expert medical testimony) to create a fact question as to whether Ms. Williamson's fractured arm was proximately caused by a breach of the appropriate standard of care. It was not enough for the plaintiff to show that an unfortunate event occurred during Ms. Williamson's treatment at the Infirmary. The doctrine of res ipsa loquitur does not apply here. Monk v. Vesely, 525 So.2d 1364 (Ala. 1988).
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
ALMON, KENNEDY, INGRAM and BUTTS, JJ., concur.
[1] Ms. Williamson died after this action had been filed, apparently from medical complications unrelated to her fractured arm. However, her personal injury action survived in favor of her personal representative. Ala. Code 1975, § 6-5-462.