WRIGHT, Retired Appellate Judge.
On March 8, 1996, Cynthia Dallas, individually, and as mother and next friend of Courtney Dallas, filed a complaint in the Dallas County Circuit Court against D.M. Russell, Jr., D.M.D. The mother asserted claims of negligence and wantonness. Russell filed a motion for a summary judgment, asserting that the action was subject to the requirements of the Medical Liability Act of 1987, §§ 6-5-540 through -552, Ala.Code 1975, and that expert testimony was required to establish the mother’s claims. The mother filed an opposition to the motion. The trial court granted Russell’s motion.
The mother appeals, contending that the trial court erred in granting Russell’s summary judgment motion. This case is before this court pursuant to § 12-2-7(6), Ala.Code 1975.
A motion for a summary judgment may be granted when no genuine issue of a material fact exists and the moving party is entitled to a judgment as a matter of law. Lewis v. State Farm Mut. Auto. Ins. Co., 705 So.2d 503 (Ala.Civ.App.1997). If the moving party makes a prima facie showing that no genuine issue of a material fact exists and that it is entitled to a judgment as a matter of law, the burden shifts to the nonmovant to present substantial evidence demonstrating the existence of a genuine issue of a material fact. Id.
The record reveals the following pertinent facts: On March 9, 1994, the mother took Courtney, who was almost three years old, to Russell, a pediatric dentist, to have her teeth cleaned. Russell had treated Courtney on another occasion, and his staff knew that Courtney was uncooperative and difficult to treat. The mother was. not allowed to go to the treatment room with Courtney.
Netera Strickland, Russell’s dental hygienist, testified by deposition that she told the mother that Courtney was uncooperative and would be restrained. Strickland stated that in the treatment room, Courtney was “pa-poosed.” Strickland “papoosed” Courtney by laying her on a special board; putting her head in a special holding area; strapping her arms to the board; and placing a velcro strap across Courtney’s legs, over her stomach, and then across her chest. After Strickland cleaned Courtney’s teeth, she turned away to take out the “prophy angle,” and Courtney fell out of the chair.
Because Strickland had turned away, she did not see Courtney fall out of the chair. She assumed that Courtney kicked out or pushed on the arm of the chair and rolled out of the chair onto the floor. Strickland stated that she was approximately one foot away from the chair when Courtney fell. She stated that Courtney’s head must have struck the arm of the chair or the floor, because Courtney had a goose-egg above her right eye. Strickland picked up Courtney and asked one of the other employees to get Russell to look at Courtney’s head and teeth. Russell noticed a bruise near Courtney’s right eye and asked Strickland to show the bruise to the mother. Strickland called the mother into Russell’s office, explained to her what had happened, and offered medical care.
Strickland admitted that a patient who is sedated or “papoosed” should be watched at “all times,” and that she turned away from Courtney for less than a minute. She also admitted that the papoose board is not secured to the dental cháir, that the chair is in a flat position, and that there is nothing to prevent a fall, because the arms of the chair are down. Strickland also admitted that she had seen other papoosed children slide up or down in a dental chair, and that a papoosed child who was wearing a certain type of tennis shoe could push the chair with his or her shoes and move around. Strickland fur *112 ther admitted that although Courtney was “squirming” even while papoosed, Strickland did not think that Courtney could roll out of the chair.
Additionally, Russell submitted an affidavit, stating that he had reviewed Strickland’s deposition testimony and that the means and methods described by Strickland regarding-her use of “the papoose” were reasonable and met the applicable standard of care not only for dental hygienists but also for pediatric dentists.
The mother asserted, without dispute, that as a result of Courtney’s fall, Coúrtney sustained a concussion; lacerations; cuts; bruises; and swollen tissue about her head, face, and neck.
Our supreme court has held as follows:
“ ‘A medical malpractice plaintiff must generally present expert testimony to establish the breach of the applicable standard of care by the defendant healthcare provider. Ala.Code 1975, § 6-5-548; Parrish v. Spink, 284 Ala. 263, 224 So.2d 621 (1969); Rosemont, Inc. v. Marshall, 481 So.2d 1126 (Ala.1985). An exception to this rule exists where the lack of care is so apparent as to be within the ken of the average layman. This Court identified four specific situations that do not require that the breach of the applicable standard of care be established by the testimony of a medical expert:
“ ‘ “1. where a foreign instrumentality is found in the plaintiffs body following surgery; 2. where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment; 3. where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice; and 4. where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor’s allegedly negligent conduct.”
“ ‘Allred v. Shirley, 598 So.2d 1347, 1350 (Ala.1992) (quoting Holt v. Godsil, 447 So.2d 191 (Ala.1984)).’ ”
Dews v. Mobile Infirmary Ass’n, 659 So.2d 61, 63 (Ala.1995) (quoting Jones v. Bradford, 623 So.2d 1112, 1114-15 (Ala.1993)). Dentists are included in the definition of a health care provider. § 6-5-542(1), Ala.Code 1975.
At the time she fell, Courtney, who was approximately three years old, was strapped to a board in a helpless position. Strickland acknowledged that a “papoosed” child requires constant supervision, that Courtney was “squirming,” and that Courtney fell and injured herself when Strickland turned away from Courtney.
After carefully reviewing the record, we conclude that Strickland set forth the standard of care applicable to this case — a “pa-poosed” child requires constant supervision or watching — and that Russell confirmed Strickland’s recitation of the standard of care. We also conclude that Strickland acknowledged that she violated that standard when she turned away to take out a “prophy angle,” even though she knew that Courtney was “squirming”; that the “papoose” board was not secured to the dental chair; and that the arms of the chair were down. Courtney’s injury was not connected to the condition for which she sought treatment; therefore, expert testimony is not required to establish the requisite standard of care. Accordingly, we conclude that the trial court erred in granting Russell’s summary judgment motion.
The judgment of the trial court is reversed and the case is remanded for further proceedings.
- The foregoing opinion was prepared by Retired Appellate Judge L. Charles Wright while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Ala.Code 1975.
REVERSED AND REMANDED.
All the judges concur.