Plaintiffs Martha and Jack McMickens appeal from a summary judgment for defendants Alston Callahan (an ophthalmologist) and his professional association on their claim for medical malpractice. The sole issue on appeal is whether the McMickenses established the applicable standard of care for an ophthalmologist prescribing the drug Blephamide, either by way of deposition testimony of another ophthalmologist, Dr. Thomas Allison; deposition testimony of a pharmacist, Dr. Stanley Susina; or two medical texts.
During the two-year period from October 12, 1980, to June 28, 1982, Mrs. McMickens saw Dr. Callahan for what she believed was an allergy in her eyes that caused her to rub them frequently. She told him that she studied a lot and that her eyes gave her "fits." At that time, she was already using antibiotics, a cortisonesteriod ophthalmic solution, and Blephamide. She also told him that Blephamide was the only thing that had helped her. Dr. Callahan examined her tear glands, determined that they had less than the normal amount of fluid, and kept her on Blephamide. She was examined four times by Dr. Callahan, the last examination being June 28, 1982, after which she consulted Dr. Allison on September 1, 1982. Dr. Allison told her that the pressure in her eyes was high, and that she had early development of cataracts in both eyes, and he took her off Blephamide.
The trial court correctly relied on Bell v. Hart,516 So.2d 562 (Ala. 1987), in granting Dr. Callahan's motion for summary judgment, specifically because the McMickenses' reliance upon the affidavit and deposition testimony of Dr. Susina, a pharmacist, to provide the standard of care for an ophthalmologist, was inappropriate. In disallowing testimony of a pharmacist in Bell v. Hart as to whether a medical doctor was negligent in prescribing Elavil, this court pointed out that the plaintiffs did not produce any evidence from another medical doctor regarding the standard of care.
The deposition testimony of the ophthalmologist, Dr. Allison, submitted by the McMickenses, also did not establish the standard. Dr. Callahan had the duty "to exercise such reasonable care, diligence, and skill as physicians, surgeons, and dentists in the same general neighborhood, and in the same general line of practice, ordinarily have and exercise in a like case." Ala. Code 1975, § 6-5-484; Dobbs v. Smith,514 So.2d 871 (Ala. 1987); Zills v. Brown, 382 So.2d 528 (Ala. 1980). Mrs. McMickens argues that her eyes should have been monitored by Dr. Callahan more frequently than the four times he examined her, in light of the fact that her prescription for Blephamide was on an "as needed" or "PRN" basis.
Dr. Allison was asked if prescribing Blephamide on a PRN basis for a chronic lid infection was in keeping with the standard of care in 1982. He responded that it was standard to use Blephamide for a lid infection, but that he would not give it on an as needed basis without checking the patient frequently, or every 3 to 6 months; however, he never testified as to the required frequency of such monitoring in the general medical community. Such monitoring is to detect any changes in intraocular pressure, any sign of infection, or any sign of *Page 581 
cataract development. Dr. Allison testified that the normal pressure range is between 10 and 20. Mrs. McMickens's pressure was 13 on the first examination and 18 the last time Dr. Callahan examined her. He said that it never rose above 20 during the two years he saw her and that she did not show any signs of cataract development. Dr. Allison also stated that there was no permanent damage to Mrs. McMickens's eyes from the slight increase in pressure.
An exception to the requirement of expert testimony in a medical malpractice case is the submission of a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice. Holt v. Godsil,447 So.2d 191 (Ala. 1984). Of the two treatises submitted by the McMickenses, only one, The 1982 Physician's Desk Reference, was proven to be standard and trustworthy. Under the section on Blephamide, it states:
 "Extended use may cause increased intraocular pressure in susceptible individuals. It is advised that the intraocular pressure be checked frequently." (Emphasis added.)
The McMickenses provided no evidence as to just how often "frequently" is. Without this, there has been no showing of a standard below which Dr. Callahan could be held to have fallen. In Powell v. Mullins, 479 So.2d 1119 (Ala. 1985), a SouthernMedical Journal article was allowed as proof of what was or was not the proper treatment, because it was specific in its statement of when certain X-rays of a high risk patient should be considered. In that case, it was before that patient left the surgical suite. Because no X-rays had been taken and an ascertainable standard was provided in the medical journal, the trial court's directed verdict in favor of the defendant doctor was held improper.
Because the pharmacist's testimony here was inadequate; because Dr. Allison did not state a community standard; and because the Physician's Desk Reference did not specify the precise frequency for monitoring a patient using Blephamide, the McMickenses submitted no evidence of a standard of care by which to judge Dr. Callahan's treatment. Summary judgment was proper.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and ADAMS, JJ., concur.