This is an appeal from a summary judgment for the defendant, Dr. Richard Meyer, in a medical malpractice case. The plaintiff, Emmett S. Bates, contended that Dr. Meyer had negligently "lost" a biopsy abstracted from his wrist. We affirm.
Emmett Bates suffered from chronic pain in his right wrist and was seen by Dr. James Lipstate at the Arthritis Clinic at the University of Alabama in Birmingham. Dr. Lipstate thought that his pain was caused by rheumatoid arthritis, pigmented villondular synovitis or possibly an infection. Dr. Lipstate suggested that Mr. Bates have a biopsy taken to help diagnose his wrist problem. Dr. Lipstate referred him to Dr. Richard Meyer for evaluation and a biopsy.
On January 31, 1984, Dr. Meyer performed a limited wrist synovectomy and removed a small synovial biopsy. Dr. Meyer testified that during the surgery he was able to rule out pigmented villondular synovitis and infection as possible problems.
After his surgery, Bates was seen by Dr. Meyer several times over a period of months on an outpatient basis. During one of Mr. Bates's office visits, Dr. Meyer called the laboratory where his biopsy had been sent and was informed that the findings indicated that there was no rheumatoid growth. After this analysis, Dr. Meyer advised Bates that he was unable to determine from the biopsy the exact source of his problems and diagnosed him as having synovitis of unknown etiology and recommended that he continue to see a rheumatologist.
Bates testified that he was told by Dr. Claude Bennett, a doctor in the Arthritis Clinic, that his biopsy had been lost and had never been sent to the "routine pathology laboratory" for examination. It was later discovered that the biopsy had been sent to Dr. William J. Koopman at a "research laboratory" at the direction of Dr. Meyer.
Dr. Meyer testified that he sent the biopsy to Dr. Koopman for analysis to determine the possibility of rheumatoid arthritis. Dr. Koopman did not operate a diagnostic laboratory, but had received grants to do research specifically in synovial tissue and its relationship to arthritis. Dr. Meyer testified that he sent the biopsy to Dr. Koopman because he felt that "this would be the best way to find out if this was indeed rheumatoid arthritis."
Bates then went to Dr. Phillip Wright, an orthopedic surgeon in Memphis, on March 13, 1985. Dr. Wright concurred in Dr. Meyer's opinion that Bates was suffering from synovitis of unknown etiology, and gave Bates several options to correct his problem. Bates then elected to undergo another limited wrist synovectomy and a synovial biopsy. Prior to the scheduled synovectomy, a synovial biopsy was taken. The pathology report revealed no growth of organisms, germs, infections, and no specific diagnosis could be made on the appearance of the tissue. After the surgery, Dr. Wright's diagnosis remained as synovitis of unknown etiology. He recommended that Bates be treated by a rheumatologist.
On June 30, 1986, Bates filed suit against Dr. Meyer, Dr. Koopman, and other physicians and nurses who had treated him, alleging that they had been negligent, that through their negligence his biopsy had been "lost," and that as a result of their negligence, he was forced to undergo surgery again on his wrist to obtain another biopsy. Dr. Meyer answered the complaint, denying any negligence and averring *Page 136 
that he had exercised reasonable care, diligence, and skill in treating Bates.
All defendants other than Dr. Meyer were voluntarily dismissed on June 21, 1989. On September 26, 1989, Dr. Meyer filed a motion for summary judgment, supported by his deposition testimony, his affidavit testimony, and the deposition testimony of Dr. Phillip Wright. Dr. Meyer's affidavit stated that "[i]n exercising, accessing, and treating Emmett C. Bates, [he] exercised that degree of care, skill, and diligence, which is ordinarily possessed and used by physicians in the national medical community in the same general line of practice under similar circumstances." The trial court entered summary judgment in favor of Dr. Meyer, and Bates appeals from that judgment.
The legal duty imposed upon physicians is to exercise the degree of reasonable care, diligence, and skill that reasonably competent physicians in the national medical community would ordinarily exercise when acting in the same or similar circumstances. Keebler v. Winfield Carraway Hospital,531 So.2d 841 (Ala. 1988). To recover damages for an alleged breach of this duty, a plaintiff must produce evidence that establishes (1) the appropriate standard of care, Dobbs v. Smith,514 So.2d 871 (Ala. 1987); (2) the doctor's deviation from that standard,Dobbs, supra; and (3) a proximate causal connection between the doctor's act or omission constituting the breach and the injury sustained by the plaintiff. Ensor v. Wilson, 519 So.2d 1244
(Ala. 1987).
The plaintiff must adduce some evidence indicating that the alleged negligence probably caused the injury; a mere possibility is insufficient. If there is a scintilla of evidence[1] that the negligence complained of probably caused the injury, then a jury question is presented and summary judgment is improper. Howard v. Mitchell, 492 So.2d 1018 (Ala. 1986).
Bates's position in this case is somewhat confusing. In his complaint, he contends that Dr. Meyer "lost" his biopsy, while he argues in his brief that the biopsy was "misplaced" and that Dr. Meyer failed to send the biopsy to a pathologist for microscopic examination to rule out numerous possible medical problems.
While the trial court did not express its rationale for entering the summary judgment, the parties have spent a great portion of their briefs arguing whether expert medical testimony is necessary in this case. Bates argues that expert medical testimony was not required because, he says, the allegations of the case are simple and fall within the comprehension of a layman.
To establish a physician's negligence, the plaintiff must ordinarily proffer expert medical testimony as to what is or is not the proper practice, treatment, or procedure. Parrish v.Spink, 284 Ala. 263, 224 So.2d 621 (1969). However, the following situations have been found to be exceptions to the general rule that expert medical testimony is necessary: (1) where a foreign instrumentality is found in the plaintiff's body following surgery, Sellers v. Noah, 209 Ala. 103,95 So. 167 (1923); (2) where the injury complained of is in no way connected to the condition for which the plaintiff sought treatment, Parrish v. Spink, 284 Ala. 263, 224 So.2d 621
(1969); (3) where the plaintiff employs a recognized standard or authoritative medical text or treatise to prove what is or is not proper practice, Zills v. Brown, 382 So.2d 528 (Ala. 1980); and (4) where the plaintiff is himself or herself a medical expert qualified to evaluate the doctor's allegedly negligent conduct, Lamont v. Brookwood Health Services, Inc.,446 So.2d 1018 (Ala. 1983).
We need not address the "medical expert" issue, because we have reviewed the record and cannot find any evidence that Dr. Meyer did, or failed to do, anything that probably caused any injury to Mr. Bates. Admittedly, there was some confusion when Dr. Bennett informed Mr. Bates that his biopsy had been lost, but *Page 137 
apparently he was unaware that the biopsy had been sent to Dr. Koopman for rheumatoid arthritis analysis. In any event, that confusion does not rise to the level of medical malpractice. It is indeed unfortunate that Bates elected to undergo another biopsy only to find out that the results were still inconclusive; however, the existence of an unfortunate result does not raise an inference of culpability. Holt v. Godsil,447 So.2d 191 (Ala. 1984).
For the foregoing reasons, we conclude that the trial court properly entered the summary judgment for Dr. Meyer. Therefore, the judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.
[1] This case was filed prior to June 11, 1987; therefore, the "scintilla rule" is the applicable standard in this case. See Ala. Code 1975, § 12-21-12.