Ethel L. Brooks, administratrix of the estate of Mary Kate Lucy, deceased, sued Dr. Richard Goldhammer, James Royals,[1] *Page 395 
and Dr. Robert Fortier-Benson, alleging that they had negligently and wantonly managed, monitored, and/or administered the induction of general anesthesia to Ms. Lucy during an attempted surgical procedure in July 1987, and that their negligence had proximately caused Ms. Lucy's death. Dr. Goldhammer, Royals, and Dr. Fortier-Benson filed motions for summary judgment, which the trial court granted. Brooks appeals only from the judgment for Dr. Goldhammer. We affirm.
Viewing the facts in the light most favorable to Brooks, the nonmoving party, as we are required to do under our applicable standard of review, we must consider that the following occurred:
Dr. Fortier-Benson, a resident at the University of South Alabama Medical School, and Dr. Goldhammer, the attending physician in charge of supervising Dr. Fortier-Benson at all times pertinent to this appeal, were charged with administering and monitoring the anesthesia given to Ms. Lucy. Under the supervision of Dr. Goldhammer, Dr. Fortier-Benson began the induction of the general anesthesia, wherein he attempted to introduce an endotracheal tube into Ms. Lucy's trachea. Dr. Fortier-Benson inserted the tube into the esophagus instead of inserting it into the trachea; after the insertion, Ms. Lucy developed cardiovascular instability. Subsequently, Dr. Goldhammer attempted to "intubate"; he successfully inserted the tube into Ms. Lucy's trachea. Cardiopulmonary resuscitation was then commenced and the operation was aborted, but the deceased never regained consciousness.
Dr. Goldhammer supported his motion for summary judgment with the pleadings, with his own deposition testimony, with the deposition testimony of Brooks's expert witness and Dr. Fortier-Benson, and with an attached brief "representing the affidavit of Dr. Goldhammer." These materials made a prima facie showing that no genuine issue of material fact existed as to whether Dr. Goldhammer's alleged breach of the applicable standard of care proximately caused Ms. Lucy's death; specifically, they made a prima facie showing that he had not breached that standard or, if he had breached it, that the breach had not proximately caused Ms. Lucy's death. Therefore, the burden shifted to Brooks to present substantial evidence, through the expert testimony of a similarly situated health care provider, that Dr. Goldhammer's conduct breached the standard of care and was the proximate cause of Ms. Lucy's death. See, Ala. Code 1975, § 6-5-542(2); § 6-5-548; and § 6-5-549; see, also Bates v. Meyer, 565 So.2d 134
(Ala. 1990); Bradford v. McGee, 534 So.2d 1076 (Ala. 1988).
Brooks introduced Dr. Stanley Hall, a board-certified anesthesiologist, similarly responsible for training and overseeing residents in anesthesiology, as her expert witness. Dr. Hall testified that Dr. Goldhammer's decision to have Dr. Fortier-Benson (who Dr. Hall called "a rather junior resident at the intubation"; "an inexperienced resident") intubate Ms. Lucy fell below the applicable standard of care; and that "[it was] inappropriate for people [such as Dr. Fortier-Benson] without the adequate skills to be doing these delicate intubations." This expert medical testimony established the appropriate standard of care and presented substantial evidence that Dr. Goldhammer breached that standard of care, and thereby created a fact question. However, Brooks's case does not end here. To create a genuine issue of material fact, Brooks was required to present substantial evidence to establish a causal connection between Dr. Goldhammer's breach and the deceased's death.
According to Brooks, there was a causal relationship between Dr. Goldhammer's breach of the standard of care and the death; he said Dr. Goldhammer was negligent "in allowing an unqualified resident to intubate [the deceased] which resulted in an esophageal intubation which further resulted in the death."
In this case, the trial court, finding no evidence of negligence on the part of Dr. Fortier-Benson in performing the intubation, entered a summary judgment for Dr. Fortier-Benson, from which Brooks did not appeal. Therefore, under the facts of this *Page 396 
case, although there was substantial evidence that Dr. Goldhammer breached the standard of care when he made the decision to allow Dr. Fortier-Benson to perform the intubation, there was not substantial evidence that the death was proximately caused by that decision, because it had been established, as a matter of law, that Dr. Fortier-Benson had not acted negligently.[2] That is the law of the case. SeeBlumberg v. Touche Ross Co., 514 So.2d 922 (Ala. 1987).
The trial court properly entered the judgment for Dr. Goldhammer.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] James Royals was a certified registered nurse anesthetist at South Alabama Medical Center in Mobile, Alabama.
[2] The evidence showed that the elapsed time between the insertion of the tube into the esophagus and the insertion of the tube into the trachea was estimated to be 15 seconds. The evidence also showed that this 15-second period had no bearing on Ms. Lucy's available oxygen.