626 So.2d 1278 (1993)
Susan A. RUDOLPH, as administratrix of the Estate of Daniel E. Rudolph, deceased
v.
Dr. Trevor R. LINDSAY; Trevor R. Lindsay, M.D., P.C.
1911570.
Supreme Court of Alabama.
July 30, 1993.
Rehearing Denied September 24, 1993.
Ronald R. Crook of Hogan, Smith, Alspaugh, Samples & Pratt, P.C., Birmingham, for appellant.
W. Stanley Rodgers and George E. Knox, Jr. of Lanier Ford Shaver & Payne, P.C., Huntsville, for appellees.
HORNSBY, Chief Justice.
The issue in this medical malpractice case is whether the defendant's summary judgment was proper on the basis that the plaintiff had not presented evidence of the standard of care. We reverse and remand.
*1279 Daniel E. Rudolph was admitted to Huntsville Hospital after stabbing himself in the chest. He was evaluated by a psychiatrist, Dr. Trevor R. Lindsay, M.D., who discharged him several days later with instructions for outpatient treatment. Four days later, Rudolph committed suicide by shooting himself.
Daniel Rudolph's wife, Susan A. Rudolph, as the administratrix of Daniel Rudolph's estate, sued Dr. Lindsay individually and his professional corporation, Trevor R. Lindsay, M.D., P.C., alleging that Dr. Lindsay negligently assessed Daniel Rudolph and negligently discharged him without suicide precautions, and that Daniel Rudolph's death occurred as a proximate result of Dr. Lindsay's negligence. Dr. Lindsay answered and moved for a summary judgment. The trial court entered a summary judgment in Dr. Lindsay's favor, and Mrs. Rudolph appeals.
A summary judgment is proper upon a showing "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. As the moving party, Dr. Lindsay had the burden of proving that there was no genuine issue of material fact.
"`The burden is on one moving for summary judgment to demonstrate that no genuine issue of material fact is left for consideration by the jury. The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact. Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110 (Ala.1977); Shades Ridge Holding Co. v. Cobbs, Allen & Hall Mortg. Co., 390 So.2d 601 (Ala. 1980); Fulton v. Advertiser Co., 388 So.2d 533 (Ala.1980).'"
Berner v. Caldwell, 543 So.2d 686, 688 (Ala. 1989) (quoting Schoen v. Gulledge, 481 So.2d 1094 (Ala.1985)).
In moving for a summary judgment, Dr. Lindsay primarily relied on his own affidavit, in which he recited his qualifications, his familiarity with the standard of care required of psychiatrists, and his recollection of the care he gave to Rudolph, and in which he then stated:
"I continued to follow Mr. Rudolph through the time of his discharge from the hospital on December 6, 1988. Toward the end of the hospitalization, Mr. Rudolph became insistent that he be discharged from the hospital to go to his parents' home. I conferred with his father, Albert Rudolph, who stated that Daniel Rudolph would be welcome in his home and that he and his wife could provide supportive care for him. The patient adamantly denied any suicidal ideation, thoughts, etc. He was apologetic and sorrowful for having entertained thoughts and actions of harming himself in the past. It was my opinion that he could not be held in the hospital against his will, and since there was nothing medically to prevent him from discharge from the hospital, I consented to discharge. In doing so, and in the manner of discussing with him and his parents such discharge, I conformed to the standard of care, skill and diligence which is expected of a psychiatrist under the circumstances. Furthermore, the death of Daniel Rudolph is not a result of any failing on my part to conform to the required degree of care."
C.R. 17.
In response to Dr. Lindsay's motion for summary judgment, Susan Rudolph offered the affidavit of Dr. Harry Doyle, M.D., a psychiatrist practicing in Philadelphia, Pennsylvania. After reciting his qualifications and portions of Daniel Rudolph's medical history from records and other materials that he had reviewed, Dr. Doyle stated:
"Mr. Rudolph was seen by Dr. Lindsay for outpatient treatment on September 21, 1988 and October 31, 1988. He was maintained on neuroleptic medication by Dr. Lindsay.
"Daniel Rudolph was next admitted to Huntsville Hospital on November 28, 1988, with a self-inflicted stab wound to the chest. He received surgical care from Dr. Sheffey and psychiatric care from Dr. Lindsay during that hospitalization. He was on suicidal precautions throughout his hospital stay, but was not transferred to the psychiatric unit after he was medically *1280 stable. He was also noted to have signs of tardive dyskinesia, a significant, potentially irreversible side effect of neuroleptic medication, during that hospitalization. He was discharged by Dr. Lindsay on December 6, 1988 absent suicide precautions. The discharge diagnosis was listed at 295.93 (schizophrenic psychosis, unspecified, subchronic with acute exacerbation).
"It is my professional opinion that Dr. Trevor Lindsay breached the minimum standard of care in his care and treatment of Daniel E. Rudolph by failing to assess the potential for suicide in light of the prior suicide attempt and his underlying psychosis. It is further my opinion that when a patient such as Daniel Rudolph has made a serious suicide attempt and then suddenly denies the significance of it and denies that he has any suicide thoughts, that is a bad prognostic sign and one which must be fully evaluated by the attending psychiatrist. It is further my opinion that Daniel Rudolph should not have been discharged absent any certified precautions on December 6, 1988 and should have been further reevaluated in light of his serious suicide attempt. It is further my professional opinion that the absence of proper evaluation and diagnosis by Dr. Trevor Lindsay in light of the prior suicide attempt and [his discharge] from the hospital absent suicide precautions [are] what led to the death of Daniel Rudolph on December 9, 1988."
C.R. 24.
The trial court's order reads, in pertinent part, as follows:
"This action is before the court on defendant's motion for summary judgment. Upon consideration of such motion, the pleadings, the affidavits submitted in support of, and, opposition to the subject motion, and oral arguments of counsel, this Court is of the opinion that the motion is due to be granted. The affidavit of plaintiff's medical expert totally fails to address the appropriate standard of care to be applied in the circumstances of this case.
"`The failure of an expert to establish the standard of care results in a lack of proof essential to a medical malpractice plaintiff's case.... In order to establish the standard of care in this case, [plaintiff's expert witness] was required to enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would ordinarily utilize when acting in the same or similar circumstances.... If the standard of care is not established, there is no measure by which the defendant's conduct can be gauged.'
"Pruitt v. Zeiger, 590 So.2d 236, 238 (Ala.1991) (citations omitted)."
Pruitt v. Zeiger, 590 So.2d 236 (Ala.1991), the case relied on by the trial court, was not a case involving a summary judgment; rather, in that case this Court reviewed the sufficiency of the deposition of the plaintiff's medical expert offered in support of the plaintiff's medical malpractice claim at trial. The trial court in Pruitt considered whether the plaintiff's medical evidence was sufficient to meet the plaintiff's burden of proof in order to establish his case at trial. When the trial court determined that the plaintiff's medical expert's deposition was insufficient to meet the plaintiff's burden, the plaintiff had nothing to support the case and declined to continue the trial. Because Pruitt was not a summary judgment case, there was no presumption, as there is in this case, requiring that the evidence be viewed most favorably to the nonmovant.
On the particular facts of Pruitt, the Court found that the testimony of the plaintiff's expert that there had been poor communication among the medical personnel involved in the case insufficient to constitute substantial evidence of a breach of the required standard of care. That is, the Court determined that there was nothing explicitly stated or to be reasonably inferred from the testimony that could serve as a reference point for determining what the defendant should have done, i.e., for determining the "standard of care." Within the context of the "substantial evidence" test, Ala.Code 1975, § 12-21-12, the Court required that the plaintiff's expert witness "enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would *1281 ordinarily utilize when acting in the same or similar circumstances." Pruitt, 590 So.2d at 238.
The essence of Pruitt was that the plaintiff failed to present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment [could] reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). In Pruitt, the "fact sought to be proved" was a breach of the standard of care required of a similarly situated physician. That is, without some reference to the content of the defendant's communication, or the persons to whom that communication should have been directed, or what the communication should have been, there was no substantial evidence from which to infer a breach of the standard of care; proof of such a breach is required in order for a plaintiff to recover in an action under Ala.Code 1975, § 6-5-548.
Pruitt was unusual in that there was nothing in the testimony of the plaintiff's expert that explicitly or implicitly supplied substantial evidence of the standard of care. Absent some specific discussion of the nature of the "lack of communication" that the plaintiff alleged resulted in a failure of appropriate medical care, there was nothing to support an inference as to what the defendant did or failed to do that constituted malpractice. In most medical malpractice cases, the standard of care is sufficiently established by reference to particular acts of the defendant. Pruitt does not add a new element to the plaintiff's burden of proof under Ala.Code 1975, § 6-5-548; reference to an explicit failure to show a standard of care was warranted in Pruitt because of the particular deficiencies of the deposition relied on by plaintiff at trial to establish the requisite failure of appropriate medical care.
Further, Pruitt does not imply any change in the settled law of summary judgment analysis in medical malpractice cases. That analysis was stated in full at the outset of this opinion, and it remains consistent with summary judgment analysis in all other types of cases. See, e.g., Willard v. Perry, 611 So.2d 358 (Ala.1992); Brooks v. Goldhammer 608 So.2d 394 (Ala.1992); Smith v. Medical Center East, 585 So.2d 1325 (Ala.1991); Morris v. Young, 585 So.2d 1374 (Ala.1991); Parrish v. Russell, 569 So.2d 328 (Ala.1990); Ex Parte Hatton, 547 So.2d 450 (Ala.1989); and Yarbrough v. Springhill Memorial Hospital, 545 So.2d 32 (Ala.1989). The analysis in Pruitt as to the standard of care would apply in regard to a summary judgment only where the movant's affidavit was so deficient that no standard of care could be inferred. For example, the simple assertion, "I did not breach the standard of care," would not shift the burden to the nonmovant, in light of Pruitt.
In the present case, the standard of care is already sufficiently established by the defendant's affidavit in support of his motion for summary judgment. Dr. Lindsay indicated that he discussed the pending release with the patient, considered the patient's treatments and representations as to stability, and checked and evaluated the likely environment of the patient after release. These particular acts supply substantial evidence as to the standard of care for a medical professional like Dr. Lindsay in the circumstances of this case. That is, reasonable people can infer that the inquiries and evaluations performed by Dr. Lindsay are what a treating psychiatrist should do in a similar situation, and that Dr. Lindsay would not disagree with that inference.
In effect, Dr. Lindsay defined a standard of care by the acts specified and indicated that by performing the acts he had provided the same care that other similarly situated health care providers would have provided. This is sufficient to meet the requirement in Pruitt that facts be set out sufficiently to indicate what the health care provider should have done in order that the factfinder might determine whether the health care provider breached the standard of care. Hence, Dr. Lindsay contends that he has not committed malpractice and is entitled to a judgment as a matter of law. Under the usual summary judgment analysis, Dr. Lindsay's affidavit is sufficient to shift to the plaintiff the burden of rebuttal.
The next question we must consider, making every reasonable inference in favor of the nonmovant, here the plaintiff, is whether Dr. *1282 Doyle's affidavit was sufficient to create a genuine issue of material fact and thereby rebut the defendant's prima facie showing. Dr. Doyle's affidavit disagrees with Dr. Lindsay's assertions as to the proper extent of evaluation before a patient's release and disputes the correctness of Dr. Lindsay's diagnosis. As in Dr. Lindsay's affidavit, the standard of care is implicit in Dr. Doyle's assertion of what Dr. Lindsay should have done. Although Dr. Doyle did not specifically state that he was familiar with the standard of care, his recitation of qualifications supports an inference that he is familiar with the appropriate standard. Dr. Doyle stated in his affidavit that Dr. Lindsay breached the standard of care by "failing to assess the potential for suicide in light of the prior suicide attempt and his underlying psychosis." Dr. Doyle's affidavit also indicates that Dr. Lindsay breached the standard by failing to more fully evaluate the decedent in light of his prior suicide attempt and in discharging the decedent without instituting suicide precautions. The standard of care, the care that Dr. Lindsay should have provided, is sufficiently inferable from the substance of Dr. Doyle's affidavit.
There is, therefore, a disagreement between these two medical experts, Dr. Lindsay and Dr. Doyle, as to the extent and quality of care that should have been delivered. This is exactly the material issue of fact that is reserved for the trier of fact. The summary judgment was therefore inappropriate in this case.
Accordingly, the summary judgment is reversed, and the cause remanded for further proceedings pursuant to this opinion.
REVERSED AND REMANDED.
ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
ALMON and SHORES, JJ., concur specially.
MADDOX and STEAGALL, JJ., dissent.
ALMON, Justice (concurring specially).
I agree that the affidavits submitted by the defendant, Dr. Lindsay, and by the plaintiff's expert, Dr. Doyle, present a fact question as to whether Dr. Lindsay breached the standard of care, and I agree that the trial court erred in holding Dr. Doyle's affidavit deficient for failure to "establish the standard of care." I write separately because I think that the Court in Pruitt v. Zeiger, 590 So.2d 236 (Ala.1991), unduly required, or at least unduly emphasized the need for, a health care expert witness to "establish the standard of care."
In medical malpractice cases, "the plaintiff must offer expert testimony as to what is or is not the proper practice, treatment, and procedure." (Emphasis added.) Bates v. Meyer, 565 So.2d 134, 136 (Ala.1990); Rosemont, Inc. v. Marshall, 481 So.2d 1126, 1129 (Ala.1985), both citing Parrish v. Spink, 284 Ala. 263, 224 So.2d 621 (1969). Bates and Rosemont are two of the three principal cases cited in Pruitt, the other being Dobbs v. Smith, 514 So.2d 871 (Ala.1987). Admittedly, Bates, Rosemont, Dobbs, and other cases cited therein and in Pruitt do speak of "establishing the standard of care," but the evidence in those cases and in Pruitt was deficient in failing to indicate in any manner that the defendant's conduct fell below the appropriate standard of care. I do not read any cases before Pruitt as holding that a medical expert witness's testimony was inadmissible or insufficient to present a fact question simply because the witness neglected to "enumerate" (Pruitt's term) the procedures required by the standard of care. Rather, the cases have properly focused on whether the witness presented substantial evidence that the defendant breached the standard of care.
Rosemont was an action against a "skilled and intermediate care nursing facility," a "hospital" within the purview of the Medical Liability Act, see Ala.Code 1975, § 6-5-481. The plaintiff presented no expert testimony that Rosemont, in failing to successfully restrain his mother, "did not use that degree of care, skill and diligence used by skilled and intermediate care nursing facilities generally in the community." 481 So.2d at 1129. The Court therefore reversed a judgment on a verdict for the plaintiff.
Dobbs underwent eye surgery at the hands of Smith, an ophthalmologist, and suffered *1283 subsequent complications. The Court affirmed a judgment based on a directed verdict for Smith:
"Dobbs did not offer any expert testimony to establish the standard of care and conduct that he alleged Smith deviated from. The record is void of any evidence that Dobbs's subsequent vision problems were the result of the surgery performed by Smith. In order to establish a physician's negligence, the plaintiff must offer expert medical testimony as to the proper practice, treatment, or procedure. [Citations omitted.] Dobbs failed to establish a standard of conduct and care by which Smith's conduct could be gauged. Further, he failed to establish that his injuries were proximately caused by a deviation from such standard."
514 So.2d at 872 (emphasis added). Thus, Dobbs is not a case where the plaintiff submitted testimony by a properly qualified expert, predicated on the facts of the case, expressing an opinion that the defendant's care fell below the standard and proximately caused injury, but simply failing to "establish the standard of care."
Nor is Bates such a case. Bates contended that Dr. Meyer had "lost" a biopsy taken from his wrist and thereby had caused him to undergo further surgery for another biopsy. The evidence indicated that Dr. Meyer had sent Bates's biopsy to a research lab instead of sending it to the routine pathology lab. Dr. Meyer supported his summary judgment motion with his affidavit stating that "[i]n exercising, accessing, and treating Emmett C. Bates, [he] exercised that degree of care, skill, and diligence, which is ordinarily possessed and used by physicians in the national medical community in the same general line of practice under similar circumstances." 565 So.2d at 136. Although the Court cited the language from Dobbs stating that a plaintiff must "establish the standard of care," it did not base its judgment on such a failure. On the contrary, it implicitly treated Dr. Meyer's affidavit as sufficient to shift the burden to Bates, and held:
"We need not address the `medical expert' issue, because we have reviewed the record and cannot find any evidence that Dr. Meyer did, or failed to do, anything that caused any injury to Mr. Bates. Admittedly, there was some confusion when Dr. Bennett informed Mr. Bates that his biopsy had been lost, but apparently he was unaware that the biopsy had been sent to Dr. Koopman for rheumatoid arthritis analysis. In any event, that confusion does not rise to the level of medical malpractice. It is indeed unfortunate that Bates elected to undergo another biopsy only to find out that the results were still inconclusive; however, the existence of an unfortunate result does not raise an inference of culpability. [Citation omitted.]"
565 So.2d at 136-37.
Pruitt affirmatively relied on the plaintiffs' failure to "establish the standard of care," but an examination of the plaintiffs' evidence as set out in the opinion shows that their expert simply failed to show any identifiable failure by Dr. Zeiger to follow the appropriate standard of care. Dr. Zeiger had performed lumbar disc surgery on Pruitt. Complications required further surgeries, and Pruitt experienced nausea, fever, vomiting, and swelling of the abdomen. Pruitt alleged that he "`received a cut' to his small intestine and another to his sciatic nerve during the course of treatment by Dr. Zeiger." 590 So.2d at 237. He offered the deposition of Dr. Lawrence C. Taylor. The Court's opinion includes the following:
"The failure of an expert to establish the standard of care results in a lack of proof essential to a medical malpractice plaintiff's case. Rosemont [, supra]. In order to establish the standard of care in this case, Dr. Taylor was required to enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would ordinarily utilize when acting in the same or similar circumstances. Bates [, supra]. If the standard of care is not established, there is no measure by which the defendant's conduct can be gauged. Dobbs [, supra]. We find that the deposition testimony of Dr. Taylor failed to establish the standard of care and, therefore, it was not possible for Dr. Taylor to testify as to Dr. Zeiger's deviation from any such standard. *1284 See McMickens v. Callahan, 533 So.2d 579 (Ala.1988).[1] A review of a portion of Dr. Taylor's deposition testimony illustrates its failure to establish the necessary elements of the Pruitts' case:
"`Q. Are you familiar with the appropriate standard of care and skill that reasonably competent physicians and surgeons in the national medical community would ordinarily exercise when acting under the same or similar circumstances for the treatment and care given to Mr. Pruitt by Dr. Zeiger on this occasion that you have made reference to earlier?
"`. . . .
"`A. [M]y main complaint and objection was the breakdown or the absence of or the deterrence of any communication or the lack of communication between the various caretakers.'
"Although Dr. Taylor alluded to a `break-down' in communication throughout his testimony, he failed to explain the manner in which communication was deficient. It was incumbent upon Dr. Taylor to explain how `physicians ... in the same general neighborhood, and in the same general line of practice,' Ala.Code 1975, § 6-5-484(a), would communicate under the circumstances presented in this case. A blanket statement that communication was poor does not establish a standard of care. `In order to establish a physician's negligence, the plaintiff must offer expert medical testimony as to the proper practice, treatment, or procedure.' Dobbs [, supra]. Dr. Taylor did not describe a procedure that rises to the level of a standard of care. He merely gave his opinion as to what Dr. Zeiger should have done under the circumstances presented in this case. `The law does not permit a physician to be at the mercy of testimony of his expert competitors, whether they agree with him or not.' Sims v. Callahan, 269 Ala. 216, 225, 112 So.2d 776, 783 (1959).
"Although Dr. Taylor was repeatedly asked to describe the standard of care, he was unable to define that standard or describe any procedure that Dr. Zeiger was required to follow in order to comply with the standard of care. The following is representative of the broad statements made by Dr. Taylor in response to this line of questioning:
"`Q. Doctor, then, is it your opinion that Dr. Zeiger deviated from the national medical community standards in the care and treatment of Mr. Pruitt in that regard in this case?
"`A. Well, I don't want to point fingers. But I do think that there was some reduced care below the standards.'
"Testimony that the care rendered was `below the standards' without establishing those standards does not satisfy the Pruitts' burden. Before the expert witness can establish a deviation from the standard of care, the witness must establish the standard from which the deviation occurred.
"In Hines v. Armbrester, 477 So.2d 302 (Ala.1985), this Court stated:
"`We are to view the testimony [of the plaintiff's expert] as a whole, and, so viewing it, determine if the testimony is sufficient to create a reasonable inference of the fact the plaintiff seeks to prove. In other words, can we say, considering the entire testimony of the plaintiff's expert, that an inference that the defendant doctor had acted contrary to recognized standards of professional care was created?'
"Id. at 304-05. In viewing the testimony in this case as directed in Hines, we conclude that the Pruitts failed to meet their burden to produce competent expert testimony of Dr. Zeiger's malpractice."
590 So.2d at 238-39. The judgment in Pruitt could have been affirmed simply on the basis that Dr. Taylor did not present substantial evidence that Dr. Zeiger's care had fallen below the standard of care. I think the *1285 opinion placed undue emphasis on the need to "establish the standard of care."
Section 6-5-548(a), Ala.Code 1975, provides: "In any action ... against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case." On motion for summary judgment, this burden does not devolve upon the plaintiff until the defendant makes a proper prima facie showing.
"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."
Rule 56(e), Ala.R.Civ.P. This burden does not require the plaintiff, or the defendant for that matter, to prove the standard of care, as such; rather, it requires the plaintiff to prove that the defendant "failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers ... ordinarily ... exercise in a like case."
Certainly, an expert proposing to give evidence that a defendant health care provider has breached the standard of care can give more persuasive evidence by stating what the defendant should have done or what similarly situated health care providers in the exercise of ordinary and reasonable care would do, but I do not think a rote recitation of such evidence is necessary to make an affidavit or a deposition sufficient to withstand a summary judgment motion. The very purpose of expert testimony is to give opinions, and if the expert properly establishes his expertise and properly sets forth the facts on which he bases his opinion, it should be sufficient for him to give an opinion that the recited facts constitute a breach of the standard of care.
The majority in this case retreats from the Pruitt rule somewhat by stating that the standard of care is inferable from the affidavit. I would overrule Pruitt to the extent it held Dr. Taylor's deposition insufficient to meet the plaintiff's burden of proof at trial simply because it failed to establish the standard of care.
The Pruitt rule presents the prospect of summary judgment arguments in which the parties engage in the secondary debate of what the standard of care is and whether the evidence actually establishes it, rather than the primary question of whether the defendant has presented substantial evidence that he did not breach the standard of care, and if so, whether the plaintiff has presented substantial evidence that he did. The standard of care is the degree of care, skill, and diligence that a similarly situated health care provider would exercise "in a like case." Therefore, evidence of the standard of care will involve the recitation of the facts of the plaintiff's case. Why then is it not sufficient, at least on a summary judgment motion, to recite those facts and then say that, in the witness's opinion, it is substandard care to do what the defendant did? Obviously, if the expert states a bare conclusion, his evidence may not be substantial evidence of a breach, but he can say what he thinks was wrong with the care that was given without necessarily saying everything that should have been done. The defendant has no such burden of establishing counterfactuals; he can simply say, "This is what I did, and this is what the standard of care requires."
Section 6-5-548 establishes a relatively high threshold for an expert to be a "similarly situated health care provider" and therefore qualified to testify against the defendant. If a witness meets this test, he will usually be familiar with the standard of care. His expertise being established, he should not have to give all of the details of his specialized knowledge that make him an expert. I do not think such a witness's affidavit or deposition should necessarily be held inadequate because he fails to "establish" the standard of care. Potentially, the Pruitt rule requires the witness to recapitulate all pertinent portions of his medical training.
As I view Pruitt, the principal question was whether the trial court erred in granting the defendant's motion to strike the deposition of the plaintiff's expert, Dr. Taylor. The *1286 motion was based on the argument that "Dr. Taylor's testimony was based upon `hindsight and speculation,'" 590 So.2d at 237, not on an argument that Dr. Taylor failed to establish the standard of care. Under either the defendant's argument or the issue addressed by the Court, the true question was whether Dr. Taylor's deposition was competent, admissible evidence. I have read the deposition in that case, and it is certainly true that Dr. Taylor's testimony was equivocal and admittedly speculative. He admitted that the greater degree of communication he advocated would not have changed the outcome of Pruitt's treatment, but would only have achieved results sooner. I agree that the deposition testimony would not have satisfied Pruitt's burden of proof. Dr. Taylor was apparently unavailable to supplement his deposition testimony, so the trial court did not err in disallowing the deposition as evidence.
An entirely different question is presented here, where there is simply a motion for summary judgment supported by the defendant's affidavit and an opposition to that motion principally through the affidavit of an expert on behalf of the plaintiff. Dr. Lindsay did not move to strike Dr. Doyle's affidavit. The parties simply joined issue on the merits and, apparently, raised the Pruitt rule at the hearing on the summary judgment motion. Even assuming that an expert should testify at trial as to the treatment that was required by the standard of care,[2] I think the question on a summary judgment motion is whether, viewing the evidence in a light most favorable to the nonmovant, the defendant's affidavit prima facie shows that he met the standard of care and, if so, whether the plaintiff's expert witness has given substantial evidence that the defendant's conduct did not meet the standard of care. The defendant's affidavit will ordinarily "establish the standard of care" simply by the defendant's assertion that what he did met the standard of care. I do not think the absence of evidence of what the defendant should have done is fatal to an affidavit on behalf of the plaintiff, at least if it can be fairly inferred from the affidavit that the witness is properly qualified, that he knows the standard of care, and that he holds the opinion that the defendant's conduct fell below the standard in an identifiable and actionable manner.
The majority opinion adequately sets out the substance of Dr. Lindsay's and Dr. Doyle's affidavits. Dr. Lindsay summarizes his treatment of Rudolph and makes a prima facie showing that he did not breach the standard of care, but Dr. Doyle's affidavit gives cogent and identifiable reasons for his opinion that Dr. Lindsay did breach the standard of care and thereby caused Rudolph's death. I agree that these affidavits demonstrate that a genuine issue of material fact is presented and that Dr. Lindsay is not entitled to a judgment as a matter of law. For the reasons stated herein, I concur to reverse the summary judgment for Dr. Lindsay.
SHORES, J., concurs.
MADDOX, Justice (dissenting).
The majority opinion seems to reach the right result, and if traditional rules governing summary judgments applied, I would concur in that result, but this is a medical malpractice case, and the legislature, right or wrong, has set out the requirements that a plaintiff must meet before a trial can occur. See the Alabama Medical Liability Act, Ala.Code 1975, § 6-5-480 et seq., as supplemented by the Alabama Medical Liability Act of 1987, Ala.Code 1975, § 6-5-540 et seq. (Supp.1987).
Section 6-5-548(a) provides, in pertinent part, that "the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other *1287 similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case." For purposes of the Act, "[s]ubstantial evidence is that character of admissible evidence which would convince an unprejudiced thinking mind of the truth of the fact to which the evidence is directed." § 6-5-542(5).
I think that the trial judge in this case correctly interpreted Alabama law when he wrote:
"This action is before the court on defendant's motion for summary judgment. Upon consideration of such motion, the pleadings, the affidavits submitted in support of, and [those in] opposition to the subject motion, and oral arguments of counsel, this Court is of the opinion that the motion is due to be granted. The affidavit of plaintiff's medical expert totally fails to address the appropriate standard of care to be applied in the circumstances of this case.
"`The failure of an expert to establish the standard of care results in a lack of proof essential to a medical malpractice plaintiff's case.... In order to establish the standard of care in this case, [plaintiff's expert witness] was required to enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would ordinarily utilize when acting in the same or similar circumstances.... If the standard of care is not established, there is no measure by which the defendant's conduct can be gauged.'
"Pruitt v. Zeiger, 590 So.2d 236, 238 (Ala.1991) (citations omitted)."
In Pruitt, this Court held that a lack of essential proof results when an expert fails to establish the standard of care in a medical malpractice case, and that in order to establish the standard of care, the plaintiff's expert must "enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would ordinarily utilize when acting in the same or similar circumstances." 590 So.2d at 238. Mrs. Rudolph distinguishes Pruitt on the ground that Pruitt involved an appeal from a dismissal when the plaintiffs declined to go forward with their case after the trial court struck the deposition testimony of the plaintiffs' sole expert. She argues that, in reviewing the expert testimony in Pruitt, the Court was not required to consider the evidence in a light most favorable to the nonmoving party, as it is required to do when reviewing a summary judgment. Leonard v. Providence Hospital, 590 So.2d 906, 907 (Ala. 1991).
I do not agree with that argument. The statutes, as I read them, are quite specific about what a plaintiff must plead, the qualifications of experts that can testify, and the quantum of proof required. I think that the legislature intended that a plaintiff called upon to oppose a motion for summary judgment must present substantial evidence by an expert that the defendant doctor violated the standard of care in treating the plaintiff, as the plaintiff specifically alleged.
I would affirm the judgment of the learned trial judge. The legislature, by an act of state-wide application, requires a plaintiff in a medical malpractice to establish his or her entitlement to maintain a malpractice action. The legislature has this power under Amendment 328, § 6.11, of the Constitution.
I believe that the legislature, in adopting § 6-5-548, setting forth the burden of proof required in actions against medical care providers, has modified Rule 56 of our Rules of Civil Procedure regarding the burden of proof at the summary judgment stage. I believe that Pruitt correctly recognizes the burden on the plaintiff in a case against a health care provider. If this was a case other than one against a health care provider, I would agree with the majority that the burden is on the movant to show no genuine issue of material fact, but the legislature changed the rules with regard to health care providers, and I believe it specifically had a constitutional right to do so. Consequently, I must respectfully dissent.
STEAGALL, J., concurs.
NOTES
[1] In McMickens, the plaintiffs' expert testified in deposition that "he would not give [the medicine at issue] on an as needed basis without checking the patient frequently, or every 3 to 6 months; however, he never testified as to the required frequency of such monitoring in the general medical community." 533 So.2d at 580 (emphasis in original).
[2] I am not sure whether an expert's testimony as to proper care is part of the predicate for his testimony as to his opinion on the question of breach or is part of his testimony as to his opinion. In either case, I would not expect that a failure to give such testimony is grounds for a directed verdict for the defendant because of a failure of proof. Rather, I would think that any objection to its absence is waivable by a failure to object during the expert's testimony. If an expert's qualifications are established or unquestioned, if a question hypothecated on the evidence is asked of the expert, and if he answers with an opinion that the defendant has breached the standard of care and thereby caused the injuries complained of, the plaintiff would seem to have given all of the evidence required by statute or case law.