I agree that the affidavits submitted by the defendant, Dr. Lindsay, and by the plaintiff's expert, Dr. Doyle, present a fact question as to whether Dr. Lindsay breached the standard of care, and I agree that the trial court erred in holding Dr. Doyle's affidavit deficient for failure to "establish the standard of care." I write separately because I think that the Court in Pruitt v. Zeiger, 590 So.2d 236 (Ala. 1991), unduly required, or at least unduly emphasized the need for, a health care expert witness to "establish the standard of care."
In medical malpractice cases, "the plaintiff must offer expert testimony as to what is or is not the proper practice, treatment, and procedure." (Emphasis added.) Bates v. Meyer,565 So.2d 134, 136 (Ala. 1990); Rosemont, Inc. v. Marshall,481 So.2d 1126, 1129 (Ala. 1985), both citing Parrish v. Spink,284 Ala. 263, 224 So.2d 621 (1969). Bates and Rosemont
are two of the three principal cases cited in Pruitt, the other being Dobbs v. Smith, 514 So.2d 871 (Ala. 1987). Admittedly,Bates, Rosemont, Dobbs, and other cases cited therein and inPruitt do speak of "establishing the standard of care," but the evidence in those cases and in Pruitt was deficient in failing to indicate in any manner that the defendant's conduct fell below the appropriate standard of care. I do not read any cases before Pruitt as holding that a medical expert witness's testimony was inadmissible or insufficient to present a fact question simply because the witness neglected to "enumerate" (Pruitt's term) the procedures required by the standard of care. Rather, the cases have properly focused on whether the witness presented substantial evidence that the defendantbreached the standard of care.
Rosemont was an action against a "skilled and intermediate care nursing facility," a "hospital" within the purview of the Medical Liability Act, see Ala. Code 1975, § 6-5-481. The plaintiff presented no expert testimony that Rosemont, in failing to successfully restrain his mother, "did not use that degree of care, skill and diligence used by skilled and intermediate care nursing facilities generally in the community." 481 So.2d at 1129. The Court therefore reversed a judgment on a verdict for the plaintiff.
Dobbs underwent eye surgery at the hands of Smith, an ophthalmologist, and suffered *Page 1283 
subsequent complications. The Court affirmed a judgment based on a directed verdict for Smith:
 "Dobbs did not offer any expert testimony to establish the standard of care and conduct that he alleged Smith deviated from. The record is void of any evidence that Dobbs's subsequent vision problems were the result of the surgery performed by Smith. In order to establish a physician's negligence, the plaintiff must offer expert medical testimony as to the proper practice, treatment, or procedure. [Citations omitted.] Dobbs failed to establish a standard of conduct and care by which Smith's conduct could be gauged. Further, he failed to establish that his injuries were proximately caused by a deviation from such standard."
514 So.2d at 872 (emphasis added). Thus, Dobbs is not a case where the plaintiff submitted testimony by a properly qualified expert, predicated on the facts of the case, expressing an opinion that the defendant's care fell below the standard and proximately caused injury, but simply failing to "establish the standard of care."
Nor is Bates such a case. Bates contended that Dr. Meyer had "lost" a biopsy taken from his wrist and thereby had caused him to undergo further surgery for another biopsy. The evidence indicated that Dr. Meyer had sent Bates's biopsy to a research lab instead of sending it to the routine pathology lab. Dr. Meyer supported his summary judgment motion with his affidavit stating that "[i]n exercising, accessing, and treating Emmett C. Bates, [he] exercised that degree of care, skill, and diligence, which is ordinarily possessed and used by physicians in the national medical community in the same general line of practice under similar circumstances." 565 So.2d at 136. Although the Court cited the language from Dobbs stating that a plaintiff must "establish the standard of care," it did not base its judgment on such a failure. On the contrary, it implicitly treated Dr. Meyer's affidavit as sufficient to shift the burden to Bates, and held:
 "We need not address the 'medical expert' issue, because we have reviewed the record and cannot find any evidence that Dr. Meyer did, or failed to do, anything that caused any injury to Mr. Bates. Admittedly, there was some confusion when Dr. Bennett informed Mr. Bates that his biopsy had been lost, but apparently he was unaware that the biopsy had been sent to Dr. Koopman for rheumatoid arthritis analysis. In any event, that confusion does not rise to the level of medical malpractice. It is indeed unfortunate that Bates elected to undergo another biopsy only to find out that the results were still inconclusive; however, the existence of an unfortunate result does not raise an inference of culpability. [Citation omitted.]"
565 So.2d at 136-37.
Pruitt affirmatively relied on the plaintiffs' failure to "establish the standard of care," but an examination of the plaintiffs' evidence as set out in the opinion shows that their expert simply failed to show any identifiable failure by Dr. Zeiger to follow the appropriate standard of care. Dr. Zeiger had performed lumbar disc surgery on Pruitt. Complications required further surgeries, and Pruitt experienced nausea, fever, vomiting, and swelling of the abdomen. Pruitt alleged that he " 'received a cut' to his small intestine and another to his sciatic nerve during the course of treatment by Dr. Zeiger." 590 So.2d at 237. He offered the deposition of Dr. Lawrence C. Taylor. The Court's opinion includes the following:
 "The failure of an expert to establish the standard of care results in a lack of proof essential to a medical malpractice plaintiff's case. Rosemont [, supra]. In order to establish the standard of care in this case, Dr. Taylor was required to enumerate the prevailing medical procedures in the national medical community that reasonably competent physicians would ordinarily utilize when acting in the same or similar circumstances. Bates [, supra]. If the standard of care is not established, there is no measure by which the defendant's conduct can be gauged. Dobbs
[, supra]. We find that the deposition testimony of Dr. Taylor failed to establish the standard of care and, therefore, it was not possible for Dr. Taylor to testify as to Dr. Zeiger's deviation from any such standard. *Page 1284 
See McMickens v. Callahan, 533 So.2d 579
(Ala. 1988).[1] A review of a portion of Dr. Taylor's deposition testimony illustrates its failure to establish the necessary elements of the Pruitts' case:
 " 'Q. Are you familiar with the appropriate standard of care and skill that reasonably competent physicians and surgeons in the national medical community would ordinarily exercise when acting under the same or similar circumstances for the treatment and care given to Mr. Pruitt by Dr. Zeiger on this occasion that you have made reference to earlier?
" '. . . .
 " 'A. [M]y main complaint and objection was the breakdown or the absence of or the deterrence of any communication or the lack of communication between the various caretakers.'
 "Although Dr. Taylor alluded to a 'break-down' in communication throughout his testimony, he failed to explain the manner in which communication was deficient. It was incumbent upon Dr. Taylor to explain how 'physicians . . . in the same general neighborhood, and in the same general line of practice,' Ala. Code 1975, § 6-5-484(a), would communicate under the circumstances presented in this case. A blanket statement that communication was poor does not establish a standard of care. 'In order to establish a physician's negligence, the plaintiff must offer expert medical testimony as to the proper practice, treatment, or procedure.' Dobbs [, supra]. Dr. Taylor did not describe a procedure that rises to the level of a standard of care. He merely gave his opinion as to what Dr. Zeiger should have done under the circumstances presented in this case. 'The law does not permit a physician to be at the mercy of testimony of his expert competitors, whether they agree with him or not.' Sims v. Callahan, 269 Ala. 216, 225, 112 So.2d 776, 783
(1959).
 "Although Dr. Taylor was repeatedly asked to describe the standard of care, he was unable to define that standard or describe any procedure that Dr. Zeiger was required to follow in order to comply with the standard of care. The following is representative of the broad statements made by Dr. Taylor in response to this line of questioning:
 " 'Q. Doctor, then, is it your opinion that Dr. Zeiger deviated from the national medical community standards in the care and treatment of Mr. Pruitt in that regard in this case?
 " 'A. Well, I don't want to point fingers. But I do think that there was some reduced care below the standards.'
 "Testimony that the care rendered was 'below the standards' without establishing those standards does not satisfy the Pruitts' burden. Before the expert witness can establish a deviation from the standard of care, the witness must establish the standard from which the deviation occurred.
 "In Hines v. Armbrester, 477 So.2d 302
(Ala. 1985), this Court stated:
 " 'We are to view the testimony [of the plaintiff's expert] as a whole, and, so viewing it, determine if the testimony is sufficient to create a reasonable inference of the fact the plaintiff seeks to prove. In other words, can we say, considering the entire testimony of the plaintiff's expert, that an inference that the defendant doctor had acted contrary to recognized standards of professional care was created?'
 "Id. at 304-05. In viewing the testimony in this case as directed in Hines, we conclude that the Pruitts failed to meet their burden to produce competent expert testimony of Dr. Zeiger's malpractice."
590 So.2d at 238-39. The judgment in Pruitt could have been affirmed simply on the basis that Dr. Taylor did not present substantial evidence that Dr. Zeiger's care had fallen below the standard of care. I think the *Page 1285 
opinion placed undue emphasis on the need to "establish the standard of care."
Section 6-5-548(a), Ala. Code 1975, provides: "In any action . . . against a health care provider for breach of the standard of care the plaintiff shall have the burden of proving by substantial evidence that the health care provider failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers in the same general line of practice, ordinarily have and exercise in a like case." On motion for summary judgment, this burden does not devolve upon the plaintiff until the defendant makes a proper primafacie showing.
 "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."
Rule 56(e), Ala.R.Civ.P. This burden does not require the plaintiff, or the defendant for that matter, to prove the standard of care, as such; rather, it requires the plaintiff to prove that the defendant "failed to exercise such reasonable care, skill and diligence as other similarly situated health care providers . . . ordinarily . . . exercise in a like case."
Certainly, an expert proposing to give evidence that a defendant health care provider has breached the standard of care can give more persuasive evidence by stating what the defendant should have done or what similarly situated health care providers in the exercise of ordinary and reasonable care would do, but I do not think a rote recitation of such evidence is necessary to make an affidavit or a deposition sufficient to withstand a summary judgment motion. The very purpose of expert testimony is to give opinions, and if the expert properly establishes his expertise and properly sets forth the facts on which he bases his opinion, it should be sufficient for him to give an opinion that the recited facts constitute a breach of the standard of care.
The majority in this case retreats from the Pruitt rule somewhat by stating that the standard of care is inferable from the affidavit. I would overrule Pruitt to the extent it held Dr. Taylor's deposition insufficient to meet the plaintiff's burden of proof at trial simply because it failed to establish the standard of care.
The Pruitt rule presents the prospect of summary judgment arguments in which the parties engage in the secondary debate of what the standard of care is and whether the evidence actually establishes it, rather than the primary question of whether the defendant has presented substantial evidence that he did not breach the standard of care, and if so, whether the plaintiff has presented substantial evidence that he did. The standard of care is the degree of care, skill, and diligence that a similarly situated health care provider would exercise "in a like case." Therefore, evidence of the standard of care will involve the recitation of the facts of the plaintiff's case. Why then is it not sufficient, at least on a summary judgment motion, to recite those facts and then say that, in the witness's opinion, it is substandard care to do what the defendant did? Obviously, if the expert states a bare conclusion, his evidence may not be substantial evidence of a breach, but he can say what he thinks was wrong with the care that was given without necessarily saying everything that should have been done. The defendant has no such burden of establishing counterfactuals; he can simply say, "This is what I did, and this is what the standard of care requires."
Section 6-5-548 establishes a relatively high threshold for an expert to be a "similarly situated health care provider" and therefore qualified to testify against the defendant. If a witness meets this test, he will usually be familiar with the standard of care. His expertise being established, he should not have to give all of the details of his specialized knowledge that make him an expert. I do not think such a witness's affidavit or deposition should necessarily be held inadequate because he fails to "establish" the standard of care. Potentially, the Pruitt rule requires the witness to recapitulate all pertinent portions of his medical training.
As I view Pruitt, the principal question was whether the trial court erred in granting the defendant's motion to strike the deposition of the plaintiff's expert, Dr. Taylor. The *Page 1286 
motion was based on the argument that "Dr. Taylor's testimony was based upon 'hindsight and speculation,' " 590 So.2d at 237, not on an argument that Dr. Taylor failed to establish the standard of care. Under either the defendant's argument or the issue addressed by the Court, the true question was whether Dr. Taylor's deposition was competent, admissible evidence. I have read the deposition in that case, and it is certainly true that Dr. Taylor's testimony was equivocal and admittedly speculative. He admitted that the greater degree of communication he advocated would not have changed the outcome of Pruitt's treatment, but would only have achieved results sooner. I agree that the deposition testimony would not have satisfied Pruitt's burden of proof. Dr. Taylor was apparently unavailable to supplement his deposition testimony, so the trial court did not err in disallowing the deposition as evidence.
An entirely different question is presented here, where there is simply a motion for summary judgment supported by the defendant's affidavit and an opposition to that motion principally through the affidavit of an expert on behalf of the plaintiff. Dr. Lindsay did not move to strike Dr. Doyle's affidavit. The parties simply joined issue on the merits and, apparently, raised the Pruitt rule at the hearing on the summary judgment motion. Even assuming that an expert should testify at trial as to the treatment that was required by the standard of care,[2] I think the question on a summary judgment motion is whether, viewing the evidence in a light most favorable to the nonmovant, the defendant's affidavit primafacie shows that he met the standard of care and, if so, whether the plaintiff's expert witness has given substantial evidence that the defendant's conduct did not meet the standard of care. The defendant's affidavit will ordinarily "establish the standard of care" simply by the defendant's assertion that what he did met the standard of care. I do not think the absence of evidence of what the defendant should have done is fatal to an affidavit on behalf of the plaintiff, at least if it can be fairly inferred from the affidavit that the witness is properly qualified, that he knows the standard of care, and that he holds the opinion that the defendant's conduct fell below the standard in an identifiable and actionable manner.
The majority opinion adequately sets out the substance of Dr. Lindsay's and Dr. Doyle's affidavits. Dr. Lindsay summarizes his treatment of Rudolph and makes a prima facie showing that he did not breach the standard of care, but Dr. Doyle's affidavit gives cogent and identifiable reasons for his opinion that Dr. Lindsay did breach the standard of care and thereby caused Rudolph's death. I agree that these affidavits demonstrate that a genuine issue of material fact is presented and that Dr. Lindsay is not entitled to a judgment as a matter of law. For the reasons stated herein, I concur to reverse the summary judgment for Dr. Lindsay.
SHORES, J., concurs.
[1] In McMickens, the plaintiffs' expert testified in deposition that "he would not give [the medicine at issue] on an as needed basis without checking the patient frequently, or every 3 to 6 months; however, he never testified as to the required frequency of such monitoring in the general medical community." 533 So.2d at 580 (emphasis in original).
[2] I am not sure whether an expert's testimony as to proper care is part of the predicate for his testimony as to his opinion on the question of breach or is part of his testimony as to his opinion. In either case, I would not expect that a failure to give such testimony is grounds for a directed verdict for the defendant because of a failure of proof. Rather, I would think that any objection to its absence is waivable by a failure to object during the expert's testimony. If an expert's qualifications are established or unquestioned, if a question hypothecated on the evidence is asked of the expert, and if he answers with an opinion that the defendant has breached the standard of care and thereby caused the injuries complained of, the plaintiff would seem to have given all of the evidence required by statute or case law.